MUSHROOM TRANSPORTATION COMPANY, Inc., Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 14510.

United States Court of Appeals Third Circuit.

Argued Feb. 18, 1964.

Decided April 24, 1964.

Israel Packel, Philadelphia, Pa. (Nathan L. Posner, Philadelphia, Pa., Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., on the brief), for petitioner.

Seymour Strongin, N.L.R.B. Washington, D. C. (Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, Melvin J. Welles, Attorney, N.L.R.B., on the brief), for respondent.

Before KALODNER and HASTIE, Circuit Judges, and KIRKPATRICK, District Judge.

KIRKPATRICK, District Judge.

The Board ordered the reinstatement with back pay of Charles Keeler, a non-regular employee of Mushroom Transportation Company, Inc., an interstate motor carrier. The case is now before this court upon Mushroom's petition to review and set aside the order and the Board's answer requesting enforcement.

In addition to its thirty or forty regular drivers, Mushroom maintains a list (supplied to it by the Union steward) of part-time drivers or "extras" who are normally hired when regular men are not available. Shortly after December 15, 1961, Cutaiar, the petitioner's president, directed that Keeler's name be removed from the extra list and that he receive no further work. The Board, adopting the trial examiner's findings, found that this was done because Cutaiar had heard rumors that Keeler was going to report the company for I.C.C. violations and also other rumors to the effect that Keeler

was telling the drivers that "they were not getting what they were entitled to" under the existing union contract. In Cutaiar's words, his reasons were that he understood that Keeler was a "crackpot" and had a reputation for being a troublemaker. In the view that we take of the case, it is immaterial whether Cutaiar was correctly informed, although it may be said that the evidence shows that the report that Keeler was a troublemaker had a fairly substantial foundation.

The evidence is to the effect that Keeler had been in the habit of talking to other employees and advising them as to their rights. The trial examiner found that the subjects of these conversations were principally holiday pay, vacations, and the company's practice of assigning trips to drivers of other companies rather than to its own regular drivers. He registered his conclusion that Keeler's activities involved attempts by him to implement the existing bargaining contract. That, however, is merely the trial examiner's characterization of the activities just mentioned. The Board further found that Keeler's activities in general were directly related to the employees' legitimate interests in terms and conditions of employment and that it was not his prime motive to advance his personal interest by establishing himself as union steward and so assuring employment on the regular list. These findings are supported by evidence and we accept them.

Upon the basis of them and other findings of like tenor, the Board concluded, "Keeler's activities, therefore, fall within the protected ambit of concerted activities as defined in Section 7 of the Act." This ruling raises the question to be decided by this court, Was Keeler in his contacts with other employees engaging in concerted activities for the purpose of mutual aid or protection within the meaning of Section 7 of the National Labor Relations Act?

We look in vain for evidence that would support a finding that Keeler's talks with his fellow employees involved any effort on his or their part to initiate or promote any concerted action to do

anything about the various matters as to which Keeler advised the men or to do anything about any complaints and grievances which they may have discussed with him. It follows that, if we were to hold that Keeler's conversations constituted concerted activity, it could only be upon the basis that any conversation between employees comes within the ambit of activities protected by the Act provided it relates to the interests of the employees. We are unable to adopt this view.

It is not questioned that a conversation may constitute a concerted activity although it involves only a speaker and a listener, but to qualify as such, it must appear at the very least that it was engaged in with the object of initiating or inducing or preparing for group action or that it had some relation to group action in the interest of the employees.

This is not to say that preliminary discussions are disqualified as concerted activities merely because they have not resulted in organized action or in positive steps toward presenting demands. We recognize the validity of the argument that, inasmuch as almost any concerted activity for mutual aid and protection has to start with some kind of communication between individuals, it would come very near to nullifying the rights of organization and collective bargaining guaranteed by Section 7 of the Act if such communications are denied protection because of lack of fruition. However, that argument loses much of its force when it appears from the conversations themselves that no group action of any kind is intended, contemplated, or even referred to.

Activity which consists of mere talk must, in order to be protected, be talk looking toward group action. If its only purpose is to advise an individual as to what he could or should do without involving fellow workers or union representation to protect or improve his own status or working position, it is an individual, not a concerted, activity, and, if it looks forward to no action at all, it is more than likely to be mere "griping."

■ There being no evidence that any question of group action entered into the conversations, we hold that Keeler was not engaged in concerted activities within the protection of Section 7 of the Act.

It is immaterial whether or not, as he testified, these individual conversations with employees which led to Keeler's being dropped from the extra list were often initiated by the other employee or employees involved. Keeler had been a shop steward in a previous employment with another company and it would be entirely natural that some of the men should from time to time consult him about their rights, and the fact, if it be a fact, that they did so would carry no implication that there was any general concerted move on foot or sought.

■ The Board found upon sufficient evidence that Keeler was a competent driver and, as such, there was nothing in his performance of his work to give dissatisfaction. However, unless limited either by a contract or by the statute, an employer has the right to discharge any employee at will. Thus, an employer who resents any activity of an employee has the right to discharge him unless it is found that the employer is trying "to interfere with, restrain or coerce employees" with respect to rights guaranteed by the Act.

In the present case there was a union contract by which the jobs of the regular employees were protected, and, as to them, the employer's right of discharge was limited by the terms of the contract, but Keeler was an extra man and, therefore, outside its protection. As to him, there being no evidence that his discharge was motivated by opposition to union policy or activity, nor by his unsuccessful prosecution of a grievance, the only limitation upon the employer's right is that which is to be found in Section 7 of the Act. It is, therefore, unnecessary to attempt to determine whether what he was doing would constitute "cause" for his discharge within the meaning of Section 10(e).

■ In reaching our conclusion we have not disturbed ony finding of fact which would be binding upon this court. The statement of the trial examiner, adopted by the Board, that there was concerted activity is an ultimate or general conclusion which must be predicated upon specific findings, and the record here shows that neither the specific findings made by the Board nor the evidence support it.

For the reasons stated the Petition of Mushroom Transportation Company, Inc., to Review and Set Aside the Board's Order of June 14, 1963, will be granted and the Board's Petition for Enforcement of the said Order will be denied.