**INDIANA GEAR WORKS, a Division of the Buehler Corporation, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 15497.**

United States Court of Appeals Seventh Circuit.

Jan. 26, 1967.

Owen J. Neighbours, James S. Haramy, Indianapolis, Ind., for petitioner.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Warren M. Davidson, Atty., N.L.R.B., Washington, D. C., for respondent.

Before DUFFY, Senior Circuit Judge, and SWYGERT and CUMMINGS, Circuit Judges.

DUFFY, Senior Circuit Judge.

This is a petition to review and set aside an order of the National Labor Relations Board (Board) issued on December 28, 1965.[1] In its answer the Board has requested that its order be enforced in full.

The Board issued a complaint against the Company alleging that employee Jerry Packard was discharged on November 14, 1964, for engaging in a protected concerted activity. It was alleged that by such conduct, the Company violated Sections 8(a) (1) and (3) of the National Labor Relations Act.

The Trial Examiner held the Company had not engaged in any unfair labor practice, and recommended the dismissal of the complaint in its entirety. The Board reversed the decision of the Trial Examiner holding that Packard's discharge was a violation of Section 8(a)

---

1. The Board's decision and order are reported at 156 N.L.R.B. No. 40.

(1) of the Act. The Company was ordered to reinstate Packard with full pay.

Jerry Packard was hired by the Company in October 1962 at an hourly wage rate of $1.80. Two years later at the time of his dismissal, his wage rate was $2.418 per hour.

On November 9, 1964, the Company announced its annual wage and fringe benefit package to its employees by sending to all employees a letter signed by the Company's president, John Buehler. This package, to become effective on November 15, provided for hourly wage increases from two cents to sixteen cents, increased pension benefits, increased paid vacation time and provided other fringe benefits amounting to an additional five cents to six cents per hour.

Packard worked on the night shift. On November 13, at least partly on Company time, Packard cut out a number of cartoons from papers, attached them to yellow paper, wrote captions on them and then attached these cartoons to an overhead light in the gear laboratory where he worked. Most of the captions ridiculed the two-cent an hour increase. Some referred to president Buehler by name. One caption stated "I'll tell you where you can stick your two cents an hour."

The Trial Examiner found that the cartoons prepared and posted by Packard were pointedly aimed and directed at president Buehler, holding him up to contemptuous ridicule, and that they were insulting, sarcastic and malicious.

Charles Kinney, a day shift superintendent, saw the cartoons on the morning of November 14. He took them to the office of the Personnel Director. He and two Personnel Directors compared the captions with Packard's handwriting and concluded that the captions had been prepared by Packard.

Packard's record was examined. This disclosed that foreman Lee had warned Packard about disobeying instructions as to bringing a radio into the plant. Also, that he had warned Packard about his uncooperative attitude and not doing his share of the work. In August or September 1964, a night shift superintendent warned Packard for disobedience and swearing at a Company parking-lot guard, and warned that a repetition would result in "serious corrective action."

The record also disclosed that McCarty, the night shift assistant gear superintendent, warned Packard about leaving sarcastic notes for day shift employees. This warning was a result of a complaint from a day shift foreman. McCarty also warned Packard about his sarcastic manner toward his fellow workers on the night shift. In early October 1964, Lee again warned Packard about his excessive horse play and poor attitude. This warning was issued as a result of continuing complaints about Packard's work from other employees in the department. In late October 1964, Sprecher, a night shift employee in the gear laboratory, complained to the superintendent that Packard was "out fumbling" the other employees and was not doing his share of the work.

In a case like this where the Board has brushed aside the findings of the Trial Examiner, it is well to again consider the teachings of the landmark case of Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456. The decision in that case has been quoted often in cases where the facts are somewhat similar to those in the case at bar.

In *Universal Camera*, the Supreme Court stated that the findings of the Labor Board must be supported by substantial evidence on the record considered as a whole; that the findings of the Trial Examiner are a part of that record; and that evidence supporting a conclusion may be less substantial when an experienced Examiner, who has seen and heard the witnesses, reaches a conclusion contrary to that reached by the Board, and that this is particularly true when the credibility of witnesses is involved.

The critical issue on this appeal is whether Packard's activities in preparing and displaying the cartoons is a con-

certed activity as defined by Section 7 of the National Labor Relations Act.[2]

■ To support the Board's findings, there must be substantial evidence in the record that Packard was engaged in a concerted activity for the purpose of mutual aid or protection, and that the employer had knowledge of the concerted nature of the activity at the time it discharged the employee. Mushroom Transportation Company v. N. L. R. B., 3 Cir. (1964), 330 F.2d 683; N. L. R. B. v. Ford Radio & Mica Corp., 2 Cir. (1958), 258 F.2d 457; N. L. R. B. v. Office Towel Supply Co., Inc., 2 Cir. (1953), 201 F.2d 838. It has been held that a complaint or gripe by an employee is not a concerted activity, Mushroom Transportation Company v. N. L. R. B., supra, 330 F.2d at 685, even though addressed to other employees. N. L. R. B. v. Office Towel Supply Co., Inc., supra, 201 F.2d at 841.

In the *Mushroom Transportation Company* case, the Court recognized that preliminary discussions might, under some circumstances, be concerted activities, but observed at 330 F.2d page 685— "However, that argument loses much of its force when it appears from the conversations themselves that no group action of any kind is intended, contemplated, or even referred to."

Undoubtedly, Packard was not satisfied with the Company's wage increase package. We can and do assume that others in the gear laboratories were of the same opinion. Furthermore, there is evidence that at least two other laboratory employees suggested captions to Packard and one of them posted a cartoon.

Previous to' the posting activities by Packard, clippings and cartoons of a humorous nature had been posted from time to time by employees on the bulletin boards and on walls of the plant. "Girly pictures" were popular. Ap-

parently there was no company policy against such postings.

■ The actions of Packard were not inspired by any pro or anti union sentiment. However, it is not essential for concerted activities under Section 7 to be limited to cases where employees are acting through or on behalf of unions. It is sufficient if the employees are acting together for mutual aid or protection. Joanna Cotton Mills Co. v. N. L. R. B., 4 Cir. (1949), 176 F.2d 749, 752.

■ However, in order to prove a concerted activity under Section 7 of the Act, it is necessary to demonstrate that the activity was for the purpose of inducing or preparing for group action to correct a grievance or a complaint.

■ There is no evidence in the record that Packard prepared and posted the cartoons for the purpose of inducing or preparing for any group action by the employees. Packard testified that he knew of no agreement among the employees to present their views as a group on the wage package. He also testified he knew of no one who had been designated as spokesman for the employees to approach the Company and complain about the wage package.

In N. L. R. B. v. Local Union No. 1229, 346 U.S. 464, 74 S.Ct. 172, 98 L. Ed. 195 (1953), the employer was a broadcasting company. Ten technicians were discharged for distributing on a picket line, hand-bills containing an attack on the quality of the Company's broadcasts. The Court held the discharge of these employees was not an unfair labor practice under Section 8(a)(1) of the Act, and was "for cause." The Court emphasized a finding of the Board—"They did not indicate that they sought to secure any benefit for themselves, *as employees,* by casting discredit upon their employer." The Court further stated, 346 U.S. at 474, 74 S.Ct. at 177—"The courts have refused to reinstate employees discharged for 'cause'

2. By Section 7 of the Act, Congress intended to safeguard the right of employees to engage in " * * * concert-

ed activities for the purpose of collective bargaining or other mutual aid or protection * * *."

consisting of insubordination, disobedience or disloyalty."

The Board's reliance on N. L. R. B. v. Thor Power Tool Company, 7 Cir. (1965), 351 F.2d 584, is misplaced for in that case the employee's "uncomplimentary remark" followed the presentation of a grievance by the employee, a union committeeman, to a company superintendent. The superintendent became angry, lost his temper and directed an obscene epithet at the employee before the latter responded. The Court said that a particular remark must be considered in the context in which it occurs. In the present case, the only prior conduct by the employer was the announcement of the wage package.

In American Art Clay Company v. N. L. R. B., 7 Cir. (1964), 328 F.2d 88, the employer called the employees together one morning to announce a change in their foreman. Some employees objected. Employee Songer suggested that if the Company wanted more production, then the employees wanted more money. Other employees spoke up saying, "That's right, we're with Joe."

In *American Art Clay* this Court pointed out there was no evidence that Joe Songer had received any authority from the other employees to speak in their behalf. Further, there was no evidence that the employees of the kiln department had any conversation among themselves concerning either a request for higher wages or improved working conditions. Citing N. L. R. B. v. Reynolds International Pen Company, 7 Cir., 162 F.2d 680, and Cleaver-Brooks Mfg. Corp. v. N. L. R. B., 7 Cir., 264 F.2d 637, we held the employees were not engaged in a protected activity within the National Labor Relations Act.

Here, the Examiner found "However, from my *observation* and *demeanor* of Packard, along with other factors here, I firmly believe that this conduct was merely in satisfaction of his own personal whim or gratification, and the carrying out of further *habitual* sarcastic reflections against those he worked for and with." [Emphasis by the Examiner].

We have heretofore noted how Packard would write sarcastic notes to members of the day shift. It was, apparently, a personal matter from which he possibly derived pleasure and satisfaction. The casual assistance which Packard received from two employees in preparing the posters can, by no stretch of interpretation, be held to be a concerted activity under the Act.

The only suggestion that the employer knew that the employees were dissatisfied with the wage package was that Packard told Ted Heiliger that if the Company could not afford to give more, it could keep his two cents an hour. However, Heiliger was an inspector; he was not a supervisor or foreman. There is no evidence that Heiliger communicated Packard's statement to any management official or personnel.

The petition to set aside the order of the Labor Board is granted.

The petition of the Labor Board for an enforcement of its order is denied.