**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**BEN PEKIN CORPORATION, Respondent.**

**No. 18894.**

United States Court of Appeals, Seventh Circuit.

Oct. 4, 1971.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Janet Skaare Morris, Atty., N. L.R.B., Washington, D. C., Arnold Ord-man, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Herman M. Levy, Atty., N.L.R.B., for petitioner.

Harold A. Katz, Irving M. Friedman, Charles Barnhill, Jr., Zenia S. Goodman, Chicago, Ill., Katz & Friedman, Chicago, Ill., for respondent.

Before HASTINGS, Senior Circuit Judge, and KERNER and SPRECHER, Circuit Judges.

PER CURIAM.

This application by the National Labor Relations Board for the enforcement of its order presents the issue of whether substantial evidence supports the Board's finding that Walter Churinoff was discharged for participating in protected concerted activity in asking, "Is there a pay-off here" when he failed to receive an anticipated increase in wages. We find that substantial evidence exists in the record to support the Board's finding and its conclusion based thereon that the respondent engaged in an unfair labor practice prohibited by Section 8(a) (1) of the National Labor Relations Act (29 U.S.C. § 158), requiring full reinstatement of Churinoff and payment of lost pay plus interest.

The respondent, Ben Pekin Corporation (Company), operates apartment buildings in Illinois, including the Fountainhead Apartments comprising twenty buildings located in Westmont, Illinois. The Company recognized the Chicago Flat Janitors Union, Local No. 1, Service Employees' International Union, AFL-CIO (Union) and had an oral agreement with the Union concerning wages, hours and working conditions of the Company's flat janitors. Churinoff had belonged to the Union for about 17 years and had been employed by the Company at Fountainhead Apartments as a flat janitor since July, 1967.

In December, 1968 Churinoff received a notice from the Union that janitors were to receive a wage increase of $75 per month effective December 1, 1968. Churinoff's gross pay was increased $27 a month in December, causing him to

discuss the $48 discrepancy with his immediate supervisor, Harry Pasquinelli, who could give him no satisfactory explanation. He then telephoned the Union's vice-president who told him that "according to the Union contract" janitors were to receive a $75-a-month raise. Churinoff then asked, "Is there a pay-off here?" This question was repeated in substantially the same form possibly to Pasquinelli and on a separate occasion to a co-worker.

Subsequently, the Union's business agent telephoned Churinoff and invited him to attend a meeting at the Fountainhead administration building. Present at the meeting were the Fountainhead janitors, two Union business agents, Pasquinelli, and a Company office employee. One of the business agents told the meeting that $27 a month was the entire increase the janitors at Fountainhead would receive and they could "take or leave" it. He then asked who had made the allegation about a pay-off. Churinoff replied that he had and the agent denied the charge.

Ben Pekin, the Company's president, heard about the pay-off remarks and ordered Churinoff discharged. By letter dated January 17, 1969, Pasquinelli discharged him for "words and actions" demonstrating that "you were not entirely satisfied with your new pay scale" and an "unhappy employee could tend to cause unrest with co-workers, which in turn could cause the efficiency of services rendered to tenants to become inadequate." Churinoff worked for the Company until February 15, 1969; he promptly complained about his discharge to the Board, which issued a complaint against the Company.

The trial examiner found that, although the Company and Union did not have a written collective-bargaining agreement, they did have a "relationship" and an "oral agreement." He also found that "the wages payable under the foregoing contract were increased as of December 1, 1968, and that the raise coming to Churinoff and other janitors

employed by Respondent was $75 a month." The Board, however, found it unnecessary to pass upon the trial examiner's conclusion that the janitors were entitled to the $75 increase, finding instead that "it is clear from the record that Churinoff thought that he and his fellow employees were entitled to an increase of $75" and "the critical question is whether Churinoff was acting in good faith on behalf of himself and his fellow employees for rights he thought they were all entitled to."

Section 7 of the National Labor Relations Act provides, "Employees shall have the right * * * to engage in * * * concerted activities for the purpose of collective bargaining or other mutual aid or protection. * * *" (29 U.S.C. § 157). Section 8(a) (1) makes it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed" by Section 7 (29 U. S.C. § 158).

We agree with the Second Circuit that "while interest on the part of fellow employees would indicate a concerted purpose, activities involving attempts to enforce the provisions of a collective bargaining agreement may be deemed to be for concerted purposes even in the absence of such interest by fellow employees." N.L.R.B. v. Interboro Contractors, Inc., 388 F.2d 495, 500 (2d Cir.1967). And "an attempt by employees to enforce their understanding of the terms of a collective bargaining agreement is a protected activity * * * if the employees have a reasonable basis for believing that their understanding of the terms was the understanding that had been agreed upon." N.L.R.B. v. John Langenbacher Co., Inc., 398 F.2d 459, 463 (2d Cir.1968), cert. denied, 393 U.S. 1049, 89 S.Ct. 685, 21 L.Ed.2d 691 (1969).

Indiana Gear Works v. N.L.R.B., 371 F.2d 273 (7th Cir.1967), is distinguishable in that the discharged employee there had posted cartoons about the plant holding the company president up to "contemptuous ridicule" and were

"insulting, sarcastic and malicious" and thus publicly vented a personal grievance.

In this case, the discharged employee was repeatedly told by his union representatives that he was entitled to a $75-a-month wage increase; there was no written collective bargaining agreement to which he could refer; instead of being given any rational explanation by the Company or the Union business agents for his failure to receive the expected increase, he was in effect told to "take it or leave it." In the heat of battle, he asked whether there had been a pay-off; this was asked only of the union vice-president and a co-worker. He denied that he had repeated this question to Pasquinelli. The repeating of the allegation at the Union meeting on the Company premises was at the express solicitation of one of the business agents.

The situation was similar to that in N.L.R.B. v. Thor Power Tool Co., 351 F.2d 584, 587 (7th Cir.1965), where we said that "not every impropriety committed during [Section 7] activity places the employee beyond the protective shield of the act" and "the employee's right to engage in concerted activity may permit some leeway for impulsive behavior." This court then held that the Board must draw the line between protected and unprotected behavior and "its determination, unless illogical or arbitrary, ought not be disturbed."

The Board concluded that Churinoff was engaged in a protected concerted activity on behalf of himself and his fellow employees, that the allegation of a "pay-off" was made in the context of that activity and that, taken in the total context, it was not so defamatory or opprobrious as to isolate the allegation from the related protected activity.

We agree with the Board and we hold that its findings are supported by substantial evidence on the record considered as a whole. 29 U.S.C. § 160(f); Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 487–488, 491, 71 S.Ct. 456, 95 L.Ed. 456 (1951); N.L.R.B. v. Duncan Foundry and Machine Works, Inc., 435 F.2d 612, 617 (7th Cir.1970).

Enforcement of the Board's order is granted.