**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**DAWSON CABINET COMPANY, INC., Respondent.**

No. 77–1326.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 16, 1977.
Decided Dec. 13, 1977.

Ruth E. Peters, Atty., N. L. R. B., Washington, D. C. (argued), John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Carl L. Taylor, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, and John D. Burgoyne, Asst. Gen. Counsel, Washington, D. C., on briefs, for petitioner.

Allan L. Bioff, Kansas City, Mo. (argued) and Watson, Ess, Marshall & Enggas, Kansas City, Mo., on brief, for respondent.

Before GIBSON, Chief Judge, VAN OOSTERHOUT, Senior Circuit Judge, and LAY, Circuit Judge.

VAN OOSTERHOUT, Senior Circuit Judge.

This case is before the court upon application of the National Labor Relations Board, pursuant to § 10(e) of the National Labor Relations Act, as amended, 29 U.S.C. §§ 151 *et seq.*, hereinafter called the Act, for enforcement of its order against respondent Dawson Cabinet Company, Inc., hereinafter called the Company. The Board's decision and order are reported at 228 NLRB No. 47. The Board adopted the recommended decision and order of the Administrative Law Judge who had conducted an evidentiary hearing.

The Board's order requires the Company to cease and desist from restraining, coercing or interfering in the exercise of the rights granted by § 7 of the Act and affirmatively requires the Company to offer employee Lois Gastineau reinstatement and make her whole for any loss of earnings suffered and to post appropriate notice.

The Company is a small family-owned and operated business engaged in making furniture and related items. The total work force consisted of twenty-two persons of whom sixteen worked in production. There were seven or eight women employees. Mrs. Gastineau was first employed by the Company in March of 1973 and except for a few breaks in her employment remained employed until she was discharged on February 13, 1976.

On February 13, 1976, Mrs. Gastineau was assigned to her regular job as ripsaw operator. The ripsaw operation requires two employees, an operator and a catcher. Mrs. Gastineau testified that the ripsaw operation and the catcher job are about even as to desirability but that the catcher job is less dangerous. Mrs. Asbell, who was serving as catcher, was excused about 9:30 a. m. to keep an appointment with her doctor. Mr. Shields, the foreman, came up to the ripsaw and stated that he would serve as operator during Mrs. Asbell's absence and that Mrs. Gastineau should serve as catcher. She refused to do so. Shields reported such refusal to management and was told to assign her to the router,[1] which he did. She refused to accept such assignment. She stated in substance that she would perform no work except that of ripsaw operator unless she was given pay equal to men. She was then taken to management and reiterated her refusal to accept the catcher or router assignment unless she received the pay received by men. A few of the men received twenty-five cents more per hour than Mrs. Gastineau. There is evidence that such men, while in lower Company seniority, had prior experience and were able to do some things which the women were not able to do.

Employees generally served at a particular machine. It was a common practice to assign employees to other machines when a need to do so arose. Upon Mrs. Gastineau's persistent refusal to accept the assignments made, she was discharged and paid her back wages.

The complaint of the Regional Director based on Mrs. Gastineau's complaint filed with him charged the Company with interrogating Mrs. Gastineau about protected activities and creating the impression of surveillance of her protected concerted activities. Such charges and only such charges were reiterated in response to the Company's motion for particulars.

Mrs. Gastineau and a then fellow employee, Mrs. Everitt, had in the fall of 1975 filed a wage complaint based on sex discrimination with respect to wages with the Hour and Wage Division of the Department of Labor. Everitt's employment had been terminated long prior to February 13. The Administrative Law Judge specifically found that the Company had no knowledge prior to Mrs. Gastineau's discharge that she had joined in a wage and hour complaint. He determined:

> The Respondent did not violate Section 8(a)(1) by interrogation on January 22 and 26, or by creating the impression of surveillance of employees' concerted activity on February 13, 1976.

Such finding and determination was not upset by the Board. The Board in a footnote states:

> The Respondent contends the Administrative Law Judge's theory for finding that Gastineau was unlawfully discharged was not embodied in the allegation of the complaint and that the allegation should be dismissed for lack of notice. We believe, however, that the issue of whether Gastineau was discharged for refusing to work in protest of unequal pay was fully litigated and the misconduct found clearly related to the conduct

---

1. The Respondent in its brief states: The transcript and the Administrative Law Judge's deci- sion, adopted by the Board, incorrectly identify the router job as the "rougher" job.

specifically alleged and therefore find no merit in the Respondent's contention. See *International Longshoremen's Association, AFL–CIO, Local 814 (West Gulf Maritime Association)*, 215 N.L.R.B. 459, 463–464 (1974).

The Company urges that enforcement of the Board's order should be denied for the following reasons:

1. The Board's legal conclusion that Gastineau's conduct on February 13, 1976 was protected by the Act is not supported by the Board's findings of fact and is erroneous as a matter of law.

2. The Board's conclusion that Gastineau's conduct on February 13, 1976 was concerted activity under Section 7 of the Act is not supported by substantial evidence, is contrary to the Board's own findings of fact and is erroneous as a matter of law.

3. The Board's finding and conclusion that Respondent's discharge of Gastineau for refusal to work as directed on February 13, 1976 constituted an unfair labor practice violates due process of law and should be denied.

We agree with the Company's second contention that the Board's finding of concerted activity is not supported by substantial evidence for the reasons hereafter set out. Such determination in and of itself requires denial of enforcement. Hence we find it unnecessary to decide issues 1 and 3.

Section 7 grants to employees the right "to engage in . . . *concerted* activities for the purpose of collective bargaining or other mutual aid or protection." Section 8(a)(1) of the Act makes it an unfair labor practice for an employer "to interfere with, restrain or coerce employees in the exercise of the rights guaranteed in Section 7." Thus, in order for employee activity to be protected under the Act, the activity must not only have a lawful objective and be carried out by lawful and proper means, but it must also be "concerted."

The Board in adopting the Administrative Law Judge's findings and decision determined that when Mrs. Gastineau refused to work as directed she was acting alone. The Board could not properly have made a contrary finding. There is no evidence that Mrs. Gastineau was joined in her refusal to work as directed by any employee. There is no evidence that any other employee shared her concern on the equal pay issue or her contention that the Company was not paying women appropriate pay. Mrs. Gastineau testified that she told foreman Shields "I said I was not going to run the router unless you pay me the same as the guys for running it." She further testified that in a conversation with James Dawson just prior to her termination she said "speaking for myself, I didn't like it because the men got paid more than me and I did the same kind of work and I didn't like them to get paid more than me, I wanted equal pay with the men."

The Board's finding that Mrs. Gastineau and Everitt jointly filed a complaint with the Wage and Hour Division in no way supports the conclusion that Mrs. Gastineau's activity on February 13, 1976, was concerted activity. Everitt's employment with the Company ended in October of 1975, long before the alleged concerted activity of February 13, 1976. There is no evidence in the record or the Board's findings that Everitt's employment was terminated because she filed the equal pay complaint.

A Company officer testified without contradiction that the Company first learned that Everitt had filed the complaint when she so testified at an employment compensation hearing on January 1, 1976, long after her employment was terminated.

The Board in *Interboro Contractors, Inc.*, 157 NLRB No. 110, *enforced*, 388 F.2d 495 (2d Cir. 1967), held that activity engaged in by an individual employee acting alone which was directed to enforce or implement the terms of a collective bargaining agreement will be deemed concerted activity within the meaning of § 7. Such holding finds support in *NLRB v. Ben Pekin*, 452 F.2d 205 (7th Cir. 1971). The *Interboro* rule has been rejected by two circuits. *NLRB v.*

*Northern Metal Co.*, 440 F.2d 881 (3d Cir. 1971); *see Buddies Supermarkets, Inc.*, 481 F.2d 714 (5th Cir. 1973). In *Northern Metal* the court holds:

> The Board would have us hold that Davis' efforts "to enforce" the provisions of the collective bargaining agreement constituted concerted activity. The Board asks us to supply the necessary element of concert from the facts that Davis was presenting a grievance "within the framework" of the collective bargaining agreement and that such grievance "affects the rights of all employees in the unit." The Second Circuit has followed such an approach, creating a kind of "constructive" concerted activity, in *NLRB v. Interboro Contractors, Inc.*, 388 F.2d 495 (2d Cir. 1967), where the court stated that "activities involving attempts to enforce the provisions of a collective bargaining agreement may be deemed to be for concerted purposes even in the absence of * * * interest (on the part of) fellow employees." That case represents a clear expansion of the Act's coverage, in the face of unambiguous words in the statute. The Act surely does not mention "concerted *purposes*." (Emphasis added.) This is clear from the language of the Act, and was emphatically recognized by this court in *Mushroom Transportation Co. v. NLRB*, 330 F.2d 683 (3d Cir. 1964). *Interboro Contractors* appears to create a legal fiction, constructive concerted activity, in an effort to support a judicial conception of a sound interpretation of the Act. We are unwilling to adopt such a fiction.

440 F.2d at 884 (footnote omitted).

In our present case the employees are not unionized and no collective bargaining agreement is in effect. Hence it is unnecessary for us to pass on the validity of the *Interboro* rule.

In *Alleluia Cushion Co.*, 221 NLRB No. 162 (1975), the Board extended the *Interboro* rule to situations where no union or collective bargaining agreement was in existence. The Board held: .

> Where an employee speaks up and seeks to enforce statutory provisions relating to occupational safety designed for the benefit of all employees, in the absence of any evidence that fellow employees disavow such representation we will find an implied consent thereto and deem such activity to be concerted.

The decision was not reviewed by a court of appeals. We have not been cited to or found any cases where the Board's extension of the *Interboro* rule to non-union and non-collective bargaining situations has been approved. Such extension has been rejected by the Fifth Circuit in *Buddies Supermarkets, supra*. The court in that case found no concerted activity and denied enforcement, stating:

> The Board undertook to bring this case within the decision in *NLRB v. Interboro Contractors, Inc.* The gist of that opinion is that any activity involving attempts to enforce the provisions of a collective bargaining agreement may be deemed to be for concerted purposes notwithstanding the absence of any overt interest on the part of fellow employees. In line with this rationale, the Board placed special emphasis on the fact that Smith was the most vocal and assertive of the four drivers in presenting his views to Company officials. It then reasoned that since he was speaking on matters of common concern to all of the drivers, he was *ipso facto* engaged in concerted activity. Building on this conception of Smith's conduct, the Board added further that Smith's forceful expression of the driver's grievances amounted to a clear invitation to his peers to join him in his protests and thus was intended to arouse some form of group action within the reasoning of *Mushroom Transportation [v. NLRB*, 330 F.2d 683 (3d Cir. 1964)].
>
> In reaching its decision we think the Board made two fundamental errors. The first has to do with its simultaneous reliance on the *Interboro* and *Mushroom Transportation* decisions. There appears to be a special irony in such reliance. Recently, the third circuit in *NLRB v. Northern Metal Co.* expressly refused to

follow *Interboro* on the ground that it represented an unwarranted expansion of the definition of concerted activity enunciated in *Mushroom Transportation.* Such a decision might easily have passed unnoticed as a typical doctrinal clash between circuits if it were not for the fact that the third circuit is the same court that decided *Mushroom Transportation* in 1964. We are persuaded by the reasoning in *Northern Metal,* however, that a statutory basis for the concerted activity rule announced in *Interboro* is questionable and hence we decline to follow that decision. Moreover, apart from the fact that the *Interboro* decision has not received wide acceptance, there is another reason why it does not apply in the context of this case. *Interboro* is distinguishable on its facts since Smith's activity here did not arise in the framework of an attempt to enforce an existing collective bargaining agreement. Thus, even if we were to fully agree with *Interboro,* this distinction would appear to place the instant case in a wholly different category. The essence of our holding therefore, is that regardless of our analysis of *Interboro* the result remains the same; the Board's reliance on it for its finding of concerted activity cannot be sustained.

The second error committed by the Board arises from its misapplication of *Mushroom Transportation.* While it is clear that the activity of a single employee may be protected in certain circumstances, we do not find the appropriate circumstances to be present in this case. 481 F.2d at 719–20 (footnotes omitted).

*NLRB v. Sencore, Inc.,* 558 F.2d 433 (8th Cir. 1977), relied upon by the Board, is clearly distinguishable factually. In that case the discharged employee had discussed the wage increase with at least nine fellow employees. We found the complaint was not solely aimed at solving a personal problem.

We hold that under the facts of this case as disclosed by the record the evidence fails to support a finding of concerted activity. We conclude that there is no substantial evidence in the record to support a charge that Mrs. Gastineau was discharged for any other reason than her failure to follow the Company's directions with respect to reasonable work assignments.

Enforcement denied.

LAY, Circuit Judge, concurring.

I concur with the majority opinion solely on the ground that there exists no substantial evidence in the record as a whole to demonstrate that when Mrs. Gastineau refused to work she was acting for the mutual aid and protection of other employees. Although the majority disclaims any investigation into the principles of *Interboro Contractors, Inc.,* 157 NLRB No. 110, enforced, 388 F.2d 495 (2d Cir. 1967), I cannot endorse the implication that *Interboro* is no longer viable authority. This court has held that an individual employee may be protected from unlawful discharge under § 7 of the Act where, although the employee acts individually, he or she acts to implement a right under a collective bargaining agreement obtained as a result of concerted activity by the employees and entered into for their mutual aid or protection. *See NLRB v. Selwyn Shoe Manufacturing Corp.,* 428 F.2d 217, 221 (8th Cir. 1970).[1]

I fully recognize that the instant case does not involve a collective bargaining agreement. This fact, however, at least on this record, does not require us to decide whether the *Interboro* rule should be extended to situations where no collective bargaining agreement exists. It is well settled that notwithstanding the absence of a collective bargaining agreement, employees may still engage in protected activities un-

1. *NLRB v. Selwyn Shoe Mfg. Corp.,* 428 F.2d 217 (8th Cir. 1970), written by Chief Judge Gibson, writing for a panel consisting of Judge Blackmun (now Mr. Justice Blackmun) and myself, impliedly accepted the rationale of *Interboro Contractors, Inc.,* 157 NLRB No. 110,

enforced, 388 F.2d 295 (2d Cir. 1967). I feel the *Interboro* rule is supported by the legislative history of the Act and the historical development of the law relating to it. *See Illinois Ruan Transp. Corp. v. NLRB,* 404 F.2d 274, 284–90 (8th Cir. 1968) (Lay, dissenting).

der § 7 where they act for the purpose of "mutual aid or protection" of others. *See, e. g., NLRB v. Schwartz,* 146 F.2d 773, 774 (5th Cir. 1945). *See also* the discussion regarding the legislative history of § 7 in my dissenting opinion in *Illinois Ruan Transport Corp. v. NLRB,* 404 F.2d 274, 284–89 (8th Cir. 1968). In any event it is not necessary to reach this issue here since there is no substantial evidence on the record as a whole that Mrs. Gastineau was acting for anyone else in her refusal to do the designated work. Finding this to be true, I would simply refuse to enforce the Board's order on the ground that it is not supported by substantial evidence on the record as a whole.