**KRISPY KREME DOUGHNUT CORP., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**Bakery, Confectionery and Tobacco Workers International Union, AFL–CIO, CLC, Intervenor.**

**No. 79–1645.**

United States Court of Appeals, Fourth Circuit.

Argued Aug. 21, 1980.

Decided Dec. 8, 1980.

H. Lane Dennard, Jr., Greenville, N.C. (Jonathan P. Pearson, Ogletree, Deakins, Smoak, Stewart & Edwards, Greenville, N.C., on brief), for petitioner.

Lafe E. Solomon, N.L.R.B., Washington, D.C. (William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Kenneth B. Hipp, Deputy Asst. Gen. Counsel, Washington, D.C., on brief), for respondent.

Judith E. Kincaid, Raleigh, N.C. (Shelley Blum, North Carolina Labor Law Center, Raleigh, N.C., on brief), for intervenor.

Before RUSSELL, WIDENER and PHILLIPS, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

The petitioner–employer seeks review of a Board order finding the discharge of the employee Terry Boggs by the petitioner violative of Section 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 151, *et seq.*, and requiring reinstatement and back pay.[1] We deny enforcement of the order.

Terry Boggs was initially employed by the petitioner on August 10, 1976 and was discharged on July 31, 1978, almost two years later. During that period he had filed four workmen's compensation claims and one lawsuit against his employer. In addition, he had been unable to work for almost four months during this period. It is the petitioner's position that all the claims were "of dubious validity." One of his claims alleged injuries to his shoulder sustained when he entangled his arm in a stair rail at work, and another claim was for neck and back injuries, which occurred when he fell over backwards in a swivel chair. His final claim on July 27, 1978 related to chest pains allegedly experienced by him at work, which he claimed were due to conditions in his working environment. At this point, the personnel director or the petitioner investigated Boggs' latest complaint and his accident and claims record, as well as his working conditions. Following this, Boggs was discharged. The reason assigned by the petitioner for the discharge was that Boggs, by his record as an employee, had shown a careless attitude towards safety and "a preoccupation with filing claims for compensation."

---

1.  245 NLRB No. 135 (1979).

A complaint under the Act was then issued by the National Labor Relations Board, and, after a hearing, the Administrative Law Judge concluded that "[petitioner herein] violated Section 8(a)(1) of the Act on July 31, 1978, by discharging Terry Boggs because of his expressed intention to file a workmen's compensation claim"[2] on account of his complaints on July 27, 1978, and "that Boggs' refusal to forebear from filing a claim for workmen's compensation falls within the protected ambit of Section 7 and * * * for that reason violated Section 8(a)(1) of the Act." Those conclusions of the Administrative Law Judge were accepted by the Board, which, on that basis, entered the order challenged by the petitioner.

The issue posed by petitioner's challenge to the Board's order is whether, as a matter of law under the Act, discharge of an individual employee for refusing to forego a workmen's compensation claim constitutes protected "concerted activity" authorizing the issuance of a cease–and–desist order under Section 7 of the Act. (29 U.S.C. § 157). For purposes of this appeal only it may be considered as undisputed that Boggs' discharge was as found by the Board. There is thus no factual issue, only a legal issue requiring a judicial construction of the term "concerted activity" in the Board's authorization statute. If such a discharge for the reason assigned is not "concerted activity," enforcement should be denied. Conversely, if it is, enforcement should be ordered. On that basis we proceed to a construction of the term "concerted activity" under Section 7 of the Act.

So far as this proceeding is concerned, Section 7 protects an employee from retaliation by his employer only on account of employee action which may be found to be "concerted activities for the purpose of collective bargaining or other mutual aid or protection." "Concerted activity," under the statute, read literally, would appear to require more than a single participant. And some authorities have held just that. *N. L. R. B. v. C & I Air Conditioning, Inc.,* 486 F.2d 977, 978, (9th Cir. 1973); *N. L. R. B. v. Northern Metal Company,* 440 F.2d 881, 884 (3d Cir. 1971); *see,* Note, *Constructive Concerted Activity and Individual Rights: The Northern Metal–Interboro Split,* 121 U.Pa.L.Rev. 152, 153 (1972).[3]

There are, however, other cases, supported by scholarly comments, which find too narrow and artificial this construction of the term "concerted activity," a term which they characterize as more "a term of art rather than a factual description." *Anchortank, Inc. v. N. L. R. B.,* 618 F.2d 1153, 1160 (5th Cir. 1980); *cf.,* Note *The Requirement of "Concerted" Action under the NLRA,* 53 Colum.L.Rev. 514, 517 (1953). These decisions point to the words in the statute which qualify, or make clear the scope of, the term "concerted activities" ("for the purpose of * * * mutual aid or protection") and, taking the two phrases together ("concerted activities" and its qualifying phrase "for the purpose of * * * mutual aid or protection"), conclude that it is the sense and intent of the statute that an action by a single employee may be treated as "concerted activity," even though participated in by a single employee, *provided,* but only *provided,* the action looks to

---

**2.** There was some contention that Boggs' discharge was related to his supposed union activities. The Administrative Law Judge found no basis for this claim and dismissed it. Thus, the only basis for a violation of the Act in this case related to the finding that Boggs was discharged because he refused to forego filing a workmen's compensation claim.

**3.** In *C & I Air Conditioning,* the Court said at p. 978:

Our circuit has indicated that the term "concerted activity" means that the employee must be acting "with or on behalf of other

employees, and not solely by and on behalf of the discharged employee himself."

In *Northern Metal,* the Court said (p. 884): Webster's New International Dictionary (2d ed.1947) defines "concert" as "agreement in a design or plan; union formed by mutual communication of opinions and views; accordance in a scheme; harmony; simultaneous action" and "concerted" as "mutually contrived or planned; agreed on." We do not believe the purpose of the Act would be served by expanding the limits of *Mushroom* to include activity which could be considered "concerted" only in a fictional sense.

group rather than mere individual action, and includes "some element of collective activity or contemplation thereof,"[4] or it is shown "that the individual in fact was acting on behalf of, or as a representative of, other employees rather than acting for the benefit of other employees only in a theoretical sense."[5]

It will not satisfy this condition for Board action under Section 7 that an employee's complaint may be directed at working conditions which affect all employees; "[i]t is . . . necessary . . . that the employee's actions themselves at least contemplate such group activity [in order to support Board jurisdiction]. As was explained in *Indiana Gear Works v. NLRB*, 371 F.2d 273, 276 (7th Cir. 1967), "in order to prove a concerted activity under Section 7 of the Act, it is necessary to demonstrate that the activity was for the purpose of inducing or preparing for group action to correct a grievance or a complaint." *Pelton Casteel, Inc. v. N. L. R. B.*, 627 F.2d 23, 28 (7th Cir. 1980). This construction of the statutory language determinative of when the action of a single employee will be deemed "concerted activity" within Section 7, is illustrated by *Mushroom Transportation Company v. N. L. R. B.*, 330 F.2d 683, 685 (3d Cir. 1964):

It is not questioned that a conversation may constitute a concerted activity although it involves only a speaker and a listener, but to qualify as such, it must appear at the very least that it was engaged in with the object of initiating or inducing or preparing for group action or that it had some relation to group action in the interest of the employees.[6]

This definition of "concerted activity," as applied to the action of a single employee was recently reaffirmed in *Pelton Casteel, Inc. v. N. L. R. B.*, 627 F.2d at 28, in which the finding of the Board that the conduct of an employee complaining of working conditions in that case constituted "concerted activity" within the meaning of Section 7.

We appear to have adopted this same construction of the statutory language. Thus, in *Owens–Corning Fiberglas Corporation v. N. L. R. B.*, 407 F.2d 1357 (4th Cir. 1969), we enforced an order of the Board finding "concerted activity" in the action of two employees in preparing and seeking from fellow employees signatures on a petition complaining of working conditions. In doing so, however, we said:

Their activity (i. e., that of the two employees) both prior and subsequent to the actual signing of the petition was *plainly intended to enlist the support and assistance of other employees for the purpose of correcting what the workers thought to be an inadequacy in working conditions*. The activity of a single employee *in enlisting the* support of his fellow employees for their mutual *aid and protection* is as much "concerted activity" as is ordinary group activity. The one seldom exists without the other.[7] *Id.* at 1365 (Italics added).

The decision in *Mushroom* has been repeatedly followed by other circuits, including our own.

**4.** *Wheeling–Pittsburgh Steel v. N. L. R. B.*, 618 F.2d 1009, 1017 (3d Cir. 1980); *Dreis & Krump Mfg. Co., Inc. v. N. L. R. B.*, 544 F.2d 320, 327 (7th Cir. 1976); *N. L. R. B. v. Buddies Supermarkets, Inc.*, 481 F.2d 714, 717 (5th Cir. 1973); *Mushroom Transportation Company v. N. L. R. B.*, 330 F.2d 683, 685 (3d Cir. 1964).

**5.** *ARO, Inc. v. N. L. R. B.*, 596 F.2d 713, 717 (6th Cir. 1979).

**6.** This conclusion was recently restated by the same court in *Wheeling–Pittsburgh Steel v. N. L. R. B.*, 618 F.2d 1009. In that case the complaint was by *two* employees but their action was *supported by "the action of fellow workers and union representation"* and involved "*from the beginning . . . some group action* by fellow workers in the interest of employee safety." *Id.* at 1017. (Emphasis added)

**7.** A similar case is *Community Hosp. of Roanoke Val., Inc. v. N. L. R. B.*, 538 F.2d 607 (4th Cir. 1976). In that case, two employees engaged in a union organizing effort at the Hospital had gone on the radio to state their reasons for their unionization effort. For this they were discharged. The Board found that the action of the employees, which resulted in their discharge was action intended for the common benefit and mutual protection of all employees and not in the promotion of an individual grievance. It accordingly met the test of *Mushroom* and *Owens–Corning Fiberglas*. The fact that the conduct was "outside the immediate employee–employer relationship" was unimpor-

This distinction under Section 7 between individual action "intended to enlist the support and assistance of other employees" and action "for the benefit of other employees only in a theoretical sense" is illustrated by the different results in our cases of *Joanna Cotton Mills Co. v. National Labor Relations Bd.*, 176 F.2d 749 (4th Cir. 1949) and *Owens–Corning Fiberglas Corp. v. N. L. R. B., supra.* In *Joanna Mills*, it was said that it is "the 'purpose' of the activity" of the employee that determines whether the complaint of the employee is within Section 7 and that such "purpose" "must be the mutual aid or protection of the employees." 176 F.2d at 153. Because it concluded that the complaint of the employee, though involving working conditions, represented a personal grievance asserted as such and was not "for the purpose of inducing or preparing for group action to correct a grievance or a complaint,"[8] the Court in that case found that there was not "concerted activity" within Section 7. In *Owens–Corning Fiberglas*, on the other hand, the action of the employees was "plainly intended to enlist the support and assistance of other employees for the purpose of correcting . . . an inadequacy in working conditions." 407 F.2d at 1365. Under those circumstances, the Court did find "concerted activity."

The Board in effect concedes that there is no evidence that the action of the solitary employee in this case intended or contemplated any group activity or that he was "in fact . . . acting on behalf of or as represent-

ative of, other employees;" at most his action can be said to have been "for the benefit of other employees only in a theoretical sense."[9] Thus, his actions did not satisfy the requirements as stated in *Mushroom, Owens–Corning Fiberglas* and similar cases as a basis for a finding of "concerted activity" in the instance of a complaint by a single employee.

It is true, as the Board argues, that a number of courts, following the rule announced in *N. L. R. B. v. Interboro Contractors, Inc.*, 388 F.2d 495 (2d Cir. 1967), have held "that complaints by an individual employee in an effort to enforce provisions of a collective bargaining agreement amounted to concerted activity under § 7 of the Act, even in the absence of interest by fellow employees in the complaints."[10] The rationale for this rule, as stated by the Court both in *ARO, Inc. v. N. L. R. B.*, 596 F.2d at 716, and in *N. L. R. B. v. C & I Air Conditioning, Inc.*, 496 F.2d at 976, as well as by the Board itself in *Bunney Bros. Construction Co.*, 139 NLRB 1516, 1519 (1962), is that individual action seeking to implement the terms of a collective bargaining agreement is merely an extension of the concerted activity which gave rise to the agreement in the first place (constructive concerted activity).[11] This reasoning, however, has not been accepted by all courts. In *N. L. R. B. v. Northern Metal Company*, 440 F.2d at 884–85, the Court, branding the finding of "constructive concerted activity" in *Interboro* as a pure "le-

tant; the critical fact was that it was action related intimately to efforts by way of group activity to improve working conditions. *Eastex, Inc. v. NLRB*, (1978) 437 U.S. 556, 565, 98 S.Ct. 2505, 2512, 57 L.Ed.2d 428.

8. *See Pelton Casteel*, 627 F.2d at 28.

9. *See ARO, Inc. v. N. L. R. B.*, 596 F.2d at 717.

10. *ARO, Inc. v. N. L. R. B.*, 596 F.2d at 716.

11. *See also, N. L. R. B. v. Bighorn Beverage*, 614 F.2d 1238, 1242 (9th Cir. 1980), where the Court said:
   The rationale of the decision [in *Interboro*] was the implementation of the agreement by the employee was an extension of the concerted activity giving rise to the agreement.

Often courts have read in *Interboro* the rationale that, since the treatment of an individual employee's complaint or grievance under a collective bargaining agreement will necessarily have an effect on other employees covered by the agreement in their conception of the values of the collective bargaining agreement an individual employee's complaint in those circumstances "may be deemed to be for concerted purposes." Again, though, as we later indicate, this point is unimportant in this proceeding since *Interboro* only applies where there is a collective bargaining agreement. *See Anchortank, Inc. v. N. L. R. B., supra*, 618 F.2d at 1160–61; *N. L. R. B. v. Ben Pekin Corporation*, 452 F.2d 205, 206–7 (7th Cir. 1971).

gal fiction," said it was "unwilling to adopt such a fiction." And in *Buddies Supermarkets, Inc., supra*, at 719–20, the Court declared "that the *Interboro* decision has not received wide acceptance." [12] It is, however, unnecessary for us to determine in this case whether *Interboro* is to be applied in this Circuit, since there is no collective bargaining agreement and, therefore, no foundation for a finding of "constructive concerted activity" under the rationale adopted in *Interboro*.

And the Board recognized that this case did not qualify under *Interboro* because of the absence of a collective bargaining agreement, but it asked that we extend the fiction of "constructive concerted activity" found in *Interboro* by holding that an individual employee is engaged in "concerted activity" whenever he or she acts in a matter which arises out of an employment relationship and may be of common interest to other employees since it is reasonable to presume that other employees, if they know of the complaint, would have joined in, thereby supporting the essential element of group or concerted action. It would apply this holding which relies on a presumption of group conduct and participation, particularly in situations where the employee's complaint relates to federal or state work safety or employment compensation statutes. It argues that the adoption of such a rule would create a presumption, which had the effect of merely shifting the burden of proof. It is significant, though, that the Board confesses in its brief in this court that no proceeding in which it has proposed this theory has the Board suggested "the precise manner whereby an employer might obtain evidence to rebut the presumption" that other employees identified with the complaint. It follows, therefore, that the Board would set up a presumption which in practical effect it would be impossible for an employer to rebut and thus would constitute an irrebuttable presumption.

The Board cites no circuit decision supporting its theory of presumed "concerted activity" in this case. The only courts which have considered it have flatly rejected any rule that where the complaint of a single employee relates to an alleged violation of federal or state safety laws and there is no proof of a purpose enlisting group action in support of the complaint, there is "constructive concerted action" meeting the threshold requirement under Section 7. *N. L. R. B. v. C & I Air Conditioning, Inc., supra* (complaint covering safety on the job site). *See, also, N. L. R. B. v. Dawson Cabinet Co., Inc., supra* (violative of the Equal Pay Act). Thus, in *N. L. R. B. v. Bighorn Beverage*, 614 F.2d 1238, 1242 (9th Cir. 1980), the Court said:

We disagree that the filing of a safety complaint in the circumstances of the case constituted a protected concerted activity. The Board found that Mortensen had acted alone in filing the complaint; however, it relied upon *Alleluia Cushion Co., Inc.*, 221 N.L.R.B. 999 (1975), to find concerted activity. In *Alleluia Cushion* the Board found that when an employee acts alone in filing a safety complaint, the consent of the other employees will be implied and the activity will be deemed concerted. This is an extension of the principle established in *NLRB v. Interboro Contractors, Inc.*, 388 F.2d 495 (2d Cir. 1967), that "activity engaged in by an individual employee acting alone which was directed to enforce or implement the terms of a collective bargaining agreement will be deemed concerted activity within the meaning of § 7." *NLRB v. Dawson Cabinet Co., Inc.*, 566 F.2d 1079, 1082 (8th Cir. 1977). The rationale of the decision was that the implementation of the agreement by the employee was an extension of the concerted activity giving rise to the agreement.

*NLRB v. C & I Air Conditioning, Inc.*, 486 F.2d 977 (9th Cir. 1973) governs the disposition of this issue. It involved, as this case does, the filing of a safety com-

---

**12.** To the same effect is *N. L. R. B. v. Dawson Cabinet Co., Inc.*, 566 F.2d 1079, 1084 (8th Cir. 1977).

plaint. Although it predated *Alleluia Cushion*, without deciding the validity of *Interboro*, we refused to extend it to situations where there was no collective bargaining agreement involved. Such an agreement is essential because it is the source of the employee's claimed rights. *NLRB v. C & I Air Conditioning, Inc.*, 486 F.2d at 979. Therefore, we must reject the Board's finding that Mortensen engaged in protected concerted activity.

And this conclusion as stated in *Bighorn Beverage* is easily understood. "Concerted activity" is an essential predicate, in effect a jurisdictional requirement, for Board action under the Act in a case such as this. The burden of establishing by proof such essential predicate to quasi–jurisdiction rests on the Board. It would be odd, indeed, if this essential quasi–jurisdiction predicate might be supplied by a presumption admittedly resting on no factual base but predicated on a purely theoretical assumption. In essence, what the Board would do under its argument would be to reverse the trial procedure in this context by requiring the employer in any proceedings under the Act to rebut the Board's authority to act before the Board would be required to prove its quasi–jurisdictional basis for the proceeding. We cannot accept such a novel argument which goes far beyond the rationale on which *Interboro* was grounded. In our opinion, the Board completely failed to establish "concerted activity" in this case and enforcement is accordingly denied.

*ENFORCEMENT DENIED.*