ANCHORTANK, INC., Petitioner Cross-Respondent,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent Cross-Petitioner.

No. 78–3812.

United States Court of Appeals, Fifth Circuit.

June 13, 1980.

Andrews, Kurth, Campbell & Jones, Clinton S. Morse, James V. Carroll, III, Houston, Tex., Rocky Robinson, for Anchortank, Inc.

Elliott Moore, Deputy Associate Gen. Counsel, Barbara Atkin, Atty., N. L. R. B., Washington, D. C., for the N. L. R. B.

Before TUTTLE, GOLDBERG and RANDALL, Circuit Judges.

GOLDBERG, Circuit Judge:

This case presents a novel and interesting question fit for a law school professor who delights in challenging his students with an issue of subtle complexity: Does an employee have a right to union representation at an interview with his employer that is held during the hiatus between the union's challenged victory in a representation election and its subsequent certification as bargaining representative? As our ensuing discussion will demonstrate, when this question is subjected to careful scrutiny, its apparent simplicity quickly disintegrates to reveal an amalgam composed of a considerable number of sub-issues. Our resolution of the questions presented by these constituent parts indicates that the National Labor Relations Board's affirmative answer to the

composite query is entitled to affirmance by this court. Our analysis also reveals, however, that the rationale of the Board, while properly applied to this case, paints far too broadly and must therefore be appropriately circumscribed.

The facts of this case are largely undisputed. On January 7, 1977, a representation election was conducted at the Texas City, Texas, facility of petitioner, Anchortank, Inc. The ballot count indicated fifteen votes cast for the union, the Oil, Chemical & Atomic Workers International Union, ten against, and five challenged ballots. The challenged ballots were thus sufficient to affect the outcome of the election. However, on November 4, 1977, the Board issued an order concluding that two of the contested ballots were cast by supervisory personnel. *See* Anchortank, Inc., 233 N.L.R.B. 295 (1977). Since a ruling on the validity of the three remaining contested ballots could no longer affect the outcome of the election, on November 29, 1977, the Board certified the union.

Petitioner's conduct between the election and the union's certification forms the basis for the alleged unfair labor practices at issue here. Petitioner admitted below[1] that on or about January 20, 1977, it changed its method of computing vacation pay and eliminated a paid holiday, and that on or about January 29, 1977, it decreased the work day from eight and one-half to eight hours, reclassified employees' job classifications, added a fourth or swing shift to the three existing shifts, and promulgated a rule requiring employees to punch in and out for their lunch breaks. Petitioner also admitted that on or about March 25, 1977, it refused to permit an employee, Herbert Charles, to have a union representative present at an investigatory interview which resulted in discipline, and that on or about May 29, 1977, it denied the request of another employee, Yoshinobu Kittley, for the attendance of a union representative at a disciplinary interview which resulted in Kittley's discharge.

The National Labor Relations Board (the Board) found that petitioner violated section 8(a)(1), (5) of the National Labor Relations Act (the Act), 29 U.S.C.A. § 158(a)(1), (5) (West 1973),[2] by making unilateral changes in working conditions. The Board further found petitioner violated section 8(a)(1) of the Act by refusing to allow Charles to have a union representative present at an investigatory interview and by denying the request of Kittley to have the presence of a union representative at a disciplinary interview. The Board's order requires petitioner to cease and desist from these unfair labor practices, to bargain with the union, and to reinstate Kittley. The case reaches us on Anchortank's petition for review and the Board's cross-petition for enforcement of this order. We enforce the order with regard to the unilateral changes in working conditions and the refusal to allow the presence of a union representative at Charles' investigatory interview; we vacate and remand the order with regard to the refusal to allow the presence of a union representative at Kittley's disciplinary interview.

I.

Petitioner does not contest the fact that it made unilateral changes in terms and conditions of employment that are sub-

---

1. The union's charges of unfair labor practices were tried before an administrative law judge largely on the basis of stipulated facts.

2. Section 8 of the Act, 29 U.S.C.A. § 158 (West 1973), in pertinent part, provides the following:
 (a) It shall be an unfair labor practice for an employee—
 (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;
 . . . . .

 (5) to refuse to bargain collectively with the representatives of his employees . . . .

 Section 7 of the Act, 29 U.S.C.A. § 157 (West 1973), in pertinent part, provides that "[e]mployees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection . . . ."

jects of mandatory bargaining. Rather, it argues that it had no duty to maintain the status quo with regard to mandatory subjects until the challenges to the election were resolved and the union was certified. This argument is foreclosed by decisions of this circuit, for we have repeatedly held that an employer who refused to bargain by making unilateral changes in mandatory subjects "on the ground that an election is invalid does so at his own risk; if the election challenge proves fruitless, an order by the Board based on the refusal to bargain will be enforced." *NLRB v. W.R. Grace & Co., Construction Products · Division,* 571 F.2d 279, 282 (5th Cir. 1978); *see, e. g., General Electric Co., Battery Products, Capacitor Department v. NLRB,* 400 F.2d 713, 717–18 (5th Cir. 1968), *cert. denied,* 394 U.S. 904, 89 S.Ct. 1012, 22 L.Ed.2d 216 (1969); *NLRB v. Laney & Duke Storage Warehouse Co.,* 369 F.2d 859, 869 (5th Cir. 1966). The Board properly found that petitioner violated section 8(a)(1), (5) by altering working conditions that are subject to mandatory bargaining.

## II.

Regarding its denial of union representation to employees Charles and Kittley at their respective interviews,[3] petitioner contends that there is no right to such representation in the absence of a certified union. Stating that "it is impossible to discern just where the Board would draw the line upon an employee's right to union representation in the absence of a certified union," petitioner parades a list of horribles before us:

Would an employee have a right of union representation at an interview where no union activity was afoot at all . . . during an organizational campaign . . when a union presented authorization cards signed by a majority of employees and demanded recognition . . . after a union filed a petition for election

.· . . where an employer had won the initial election but challenges were outstanding . . . where an employer had won the election outright . . . when the employee was a member of a union completely unrelated to his present employer?

The Board counters petitioner's argument by asserting that petitioner misconceives the nature of the right to representation. It argues that the right is bottomed in section 7 of the Act, 29 U.S.C.A. § 157 (West 1973),[4] and "[t]hus, the right to representation belongs to the employee rather than to the union."

Each of these positions contains an element of truth. However, each party also overstates its case, for the parties have ignored the issue crucial to resolution of this dispute: under what conditions will an employee's request for a union representative at an interview constitute a "concerted activit[y] for the purpose of . . . mutual aid or protection" within the meaning of section 7?

## A.

■ It is clear that Charles' and Kittley's requests for union representation would have constituted concerted activities for mutual aid and protection if the requested representative had been another employee in the relevant bargaining unit at Anchortank. Section 7 protects concerted activity by employees, and one employee's request for the presence of another unit employee at an interview is concerted activity. *See NLRB v. J. Weingarten, Inc.,* 420 U.S. 251, 269 & n. 1, 95 S.Ct. 959, 969, 43 L.Ed.2d 171 (1975) (dissenting opinion) ("The Court today construes [the right to engage in concerted activities for mutual aid or protection] to include union representation or the presence of another employee at any interview the employee reasonably fears might result in disciplinary action"); *Oil, Chemical*

---

**3.** For the purposes of section II of this opinion, we shall assume that the interviews to which Charles and Kittley were subjected were the type of interviews during which they were entitled to representation. We shall resolve the issue whether this assumption is valid in section III *infra.*

**4.** Section 7 of the Act is reprinted at note 2 *supra.*

& Atomic Workers International Union v. NLRB, 547 F.2d 575, 592 (D.C.Cir.1976) ("Section 7 protects the right to act in concert, not merely the right to act in concert with a recognized union"), cert. denied, 431 U.S. 966, 97 S.Ct. 2923, 53 L.Ed.2d 1062 (1977); NLRB V. Columbia University, 541 F.2d 922, 931 & n. 5 (2d Cir. 1976) ("the protection afforded to concerted activities under the NLRA applies equally to workers in unionized or in non-unionized firms"). See generally NLRB v. Washington Aluminum Co., 370 U.S. 9, 82 S.Ct. 1099, 8 L.Ed.2d 298 (1962).[5]

We cannot dispose of this case on this ground, however, for the record does not reflect whether the requested representative worked at Anchortank. For purposes of analysis, therefore, we must assume that the requested union representative was not an employee of petitioner; the Board's order can be enforced only if employees Charles' and Kittley's requests for the presence of a nonemployee union representative constituted a section 7 concerted activity.[6]

**B.**

If the union had been certified or voluntarily recognized by petitioner when Charles and Kittley requested union representation, their requests would clearly have been section 7 concerted activity. In NLRB v. J. Weingarten, Inc., 420 U.S. 251, 95 S.Ct. 959, 43 L.Ed.2d 171 (1975), the Supreme Court faced the issue whether an employee's request for the presence of his collective bargaining representative[7] at an interview which the employee reasonably fears

---

5. We express no opinion whether one employer's employee's request for another employer's employee is a concerted activity for mutual aid or protection. Cf. Eastex, Inc. v. NLRB, 437 U.S. 556, 98 S.Ct. 2505, 57 L.Ed.2d 428 (1978) (in certain contexts employees' activities on behalf of another employer's employees constitutes concerted activities for mutual aid or protection); NLRB v. Circle Bindery, Inc., 536 F.2d 447 (1st Cir. 1976) (one employer's employee engaged in section 7 concerted activity when he notified union representative of another employer's employees that the latter employer was violating his collective bargaining agreement by subcontracting work to former employer). We also express no opinion whether there exists concerted activity for mutual aid or protection when an employee requests the presence of another employee who works for the same employer as the requesting employee but is employed in a different bargaining unit.

6. We shall also assume that the requested union representative was not an employee of another employer. See note 5 supra. Accordingly, our use of the terms "union representative" and "union representation" in the remainder of section II of this opinion shall, unless otherwise indicated, refer to representation by union persons who are not employees of petitioner or any other employers.

7. The Court did not indicate whether the union had been selected as bargaining representative by means of the employer's voluntary recognition or through the Board's election procedures. Instead, the Court only stated that the employee "[was] represented for collective-bargaining purposes" by the union. See id. at 254, 95 S.Ct. at 962. Since a section 7 right to union representation exists once the union has demonstrated its majority support satisfying the representation procedures of section 9 of the Act, 29 U.S.C.A. § 159 (West 1973), see p. 1162 infra, we attach no significance to the manner in which this support is shown insofar as the existence of the section 7 right is concerned. As our discussion will indicate, however, the fact that a union is chosen through an election may affect the point at which an employer's refusal to allow union representation violates section 8(a)(1). See section IIB infra.

We iterate that in section II of this opinion we are using the term "union representation" to refer to the presence of a nonemployee at an interview. See p. 1158, and note 6 supra.

Section 9 of the Act, 29 U.S.C.A. § 159 (West 1973), in pertinent part, provides the following:

(a) Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment: Provided, That any individual employee or a group of employees shall have the right at any time to present grievances to their employer and to have such grievances adjusted, without the intervention of the bargaining representative, as long as the adjustment is not inconsistent with the terms of a collective-bargaining contract or agreement then in effect: Provided further, That the bargaining representative has been given opportunity to be present at such adjustment.

(b) The Board shall decide in each case whether, in order to assure to employees the

may result in discipline is section 7 protected activity. The Court found that

[t]he action of an employee in seeking to have the assistance of his union representative at a confrontation with his employer clearly falls within the literal wording of § 7 that "[e]mployees shall have the right . . . to engage in . . . concerted activities for the purpose of . . . mutual aid or protection." . . . This is true even though the employee alone may have an immediate stake in the outcome; he seeks "aid or protection" against a perceived threat to his employment security. The union representative whose participation he seeks is, however, safeguarding not only the particular employee's interest, but also the interests of the entire bargaining unit by exercising vigilance to make cer-

fullest freedom in exercising the rights guaranteed by this subchapter, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof: *Provided*, That the Board shall not (1) decide that any unit is appropriate for such purposes if such unit includes both professional employees and employees who are not professional employees unless a majority of such professional employees vote for inclusion in such unit; or (2) decide that any craft unit is inappropriate for such purposes on the ground that a different unit has been established by a prior Board determination, unless a majority of the employees in the proposed craft unit vote against separate representation or (3) decide that any unit is appropriate for such purposes if it includes, together with other employees, any individual employed as a guard to enforce against employees and other persons rules to protect property of the employer or to protect the safety of persons on the employer's premises; but no labor organization shall be certified as the representative of employees in a bargaining unit of guards if such organization admits to membership, or is affiliated directly or indirectly with an organization which admits to membership, employees other than guards.

(c)(1) Whenever a petition shall have been filed, in accordance with such regulations as may be prescribed by the Board—

(A) by an employee or group of employees or any individual or labor organization acting in their behalf alleging that a substantial number of employees (i) wish to be represented for collective bargaining and that their employer declines to recognize their representative as the representative defined in subsection (a) of this section, or (ii) assert that the individual or labor organization, which has been certified or is being currently recognized by their employer as the bargaining representative, is no longer a representative as defined in subsection (a) of this section; or

(B) by an employer, alleging that one or more individuals or labor organizations have presented to him a claim to be recognized as the representative defined in subsection (a) of this section;

the Board shall investigate such petition and if it has reasonable cause to believe that a question of representation affecting commerce exists shall provide for an appropriate hearing upon due notice. Such hearing may be conducted by an officer or employee of the regional office, who shall not make any recommendations with respect thereto. If the Board finds upon the record of such hearing that such a question of representation exists, it shall direct an election by secret ballot and shall certify the results thereof.

(2) In determining whether or not a question of representation affecting commerce exists, the same regulations and rules of decision shall apply irrespective of the identity of the persons filing the petition or the kind of relief sought and in no case shall the Board deny a labor organization a place on the ballot by reason of an order with respect to such labor organization or its predecessor not issued in conformity with section 160(c) of this title.

(3) No election shall be directed in any bargaining unit or any subdivision within which in the preceding twelve-month period, a valid election shall have been held. Employees engaged in an economic strike who are not entitled to reinstatement shall be eligible to vote under such regulations as the Board shall find are consistent with the purposes and provisions of this subchapter in any election conducted within twelve months after the commencement of the strike. In any election where none of the choices on the ballot receives a majority, a run-off shall be conducted, the ballot providing for a selection between the two choices receiving the largest and second largest number of valid votes cast in the election.

(4) Nothing in this section shall be construed to prohibit the waiving of hearings by stipulation for the purpose of a consent election in conformity with regulations and rules of decision of the Board.

(5) In determining whether a unit is appropriate for the purposes specified in subsection (b) of this section the extent to which the employees have organized shall not be controlling.

tain that the employer does not initiate or continue a practice of imposing punishment unjustly. The representative's presence is an assurance to other employees in the bargaining unit that they, too, can obtain his aid and protection if called upon to attend a like interview.

*Id.* at 260–61, 95 S.Ct. at 965 (footnote omitted). The Court also concluded that the existence of the right

plainly effectuates the most fundamental purposes of the Act. In § 1, 29 U.S.C. § 151, the Act declares that it is the goal of national labor policy to protect "the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of . . . mutual aid or protection." To that end the Act is designed to eliminate the "inequality of bargaining power between employees . . . and employers." *Ibid.* Requiring a lone employee to attend an investigatory interview which he reasonably believes may result in the imposition of discipline perpetuates the inequality the Act was designed to eliminate, and bars recourse to the safeguards the Act provided "to redress the perceived imbalance of economic power between labor and management."

*Id.* at 261–62, 95 S.Ct. at 966. The Court thus held that the request for union representation was protected activity.

*Weingarten* cannot control the resolution of this case, however, for at the time of the requests for union representation, the union had been neither certified nor voluntarily recognized as bargaining representative. To determine whether concerted activity exists when an employee asks for union representation by a union which has won a challenged election,[8] we must examine afresh the scope of section 7.

## C.

◼ The mere fact that an employee has acted alone does not preclude treatment of his action as concerted activity for mutual aid or protection under section 7. *See, e. g., Richardson Paint Co. v. NLRB,* 574 F.2d 1195, 1207 (5th Cir. 1978); *Dreis & Krump Manufacturing Co. v. NLRB,* 544 F.2d 320, 328 (7th Cir. 1976). The words "concerted activities" in section 7 constitute a term of art rather than a factual description. Comment, *Constructive Concerted Activity and Individual Rights: The Northern Metal-Interboro Split,* 121 U.Pa.L.Rev. 152, 153–54 (1972). As a result, the determination whether a single employee's action is protected by section 7 turns on the "interpretation of the purpose and effect of such action and not upon the simple and more limited question of whether there was, in fact, action 'in concert.'" *Id.* at 154 (footnote omitted). The courts have split, however, over the question whether the action of a single employee must involve both a concerted purpose and a concerted effect to deserve section 7 protection or whether a concerted effect alone will suffice.

*NLRB v. Interboro Contractors, Inc.,* 388 F.2d 495 (2d Cir. 1967), is the leading proponent of the view that an effect on the group suffices to render an employee's action "concerted" for the purpose of section 7. The court in *Interboro* held that an employee's complaints concerning breaches of a collective bargaining agreement were protected by section 7. In so holding, the court stated that the employee's activity was "concerted" for section 7 purposes whether or not group activity or interest was contemplated: "[W]hile interest on the part of fellow employees would indicate a concerted purpose, activities involving attempts to enforce the provisions of a collective bargaining agreement may be deemed to be for concerted purposes even in the

8. By stating that a union has "won a challenged election," we mean that after the election, but before election challenges have been resolved, the union has tallied a majority of the unchallenged votes that have been cast. Thus, in this case the union "won a challenged election" because it received a majority (15) of the

unchallenged ballots that were cast (25). In the situation in which union A has received three votes, union B two votes, and "no-representative" two votes, union A has *not* "won a challenged election" because its tally (3) is *not* a majority of the unchallenged ballots that were cast (7).

absence of such interest by fellow employees." *Id.* at 500. The crucial inquiry of this approach is the question whether the employee's activity will have an effect on his fellow employees. *See* Comment, *Constructive Concerted Activity and Individual Rights: The Northern Metal-Interboro Split*, 121 U.Pa.L.Rev. 152, 160 (1972).

*Mushroom Transportation Co. v. NLRB,* 330 F.2d 683 (3d Cir. 1964), is the leading case adumbrating the competing approach to the meaning of "concerted activities." The court in *Mushroom* held unprotected an employee's advice to other employees relating to breaches of the collective bargaining agreement. In so holding, it did not reject the Board's finding that the employee's "activities in general were directly related to the employees' legitimate interests in terms and conditions of employment and that it was not his prime motive to advance his personal interest . . . ." *Id.* at 684. Rather, the court held that an activity of a single employee is concerted only if "it was engaged in with the object of initiating or inducing or preparing for group action or that it had some relation to group action in the interest of the employees." *Id.* at 685.[9]

In *Weingarten, supra,* the Supreme Court seemingly adopted the *Interboro* approach. In concluding that an employee engages in concerted activity when he seeks union representation at an interview which he rea-sonably fears may lead to discipline, the Court focused entirely on the effects of such representation on the bargaining unit. *See id.,* 420 U.S. at 260–61 & n. 6, 95 S.Ct. at 965. Significantly, the Court did not discuss whether the employee's action was designed to induce or prepare for group action or had some relation to group action in the interest of the employees, as is required by *Mushroom, supra.*[10]

■ However, for the purposes of our present discussion we need not decide whether the Supreme Court has approved the *Interboro* approach,[11] because, before a representation election is conducted, an employee's request for union representation at an interview does not satisfy even this more lenient view of section 7. We conclude that before a representation election is held, the presence of a union representative does not have the effect on other employees essential to satisfaction of the *Interboro* standard for concerted activity; thus, the employee's actions in seeking the presence of the representative at that time does not constitute concerted activity.[12]

Crucial to the Supreme Court's finding of concerted activity in *Weingarten, supra,* was its conclusion that the participation of the chosen bargaining representative "safeguard[s] not only the particular employee's interest, but also the interests of the entire bargaining unit by exercising vigilance to

---

**9.** This circuit had adopted the *Mushroom* approach to concerted activity, *see, e. g., NLRB v. Buddies Supermarkets, Inc.,* 481 F.2d 714 (5th Cir. 1973), as have others. *See, e. g., Keokuk Gas Service Co. v. NLRB,* 580 F.2d 328, 333 (8th Cir. 1978); *Dreis v. Krump, supra,* 544 F.2d at 327.

**10.** Admittedly, the employee's activity in *Weingarten* satisfied the *Mushroom* standard for concerted activity, for, by asking for union representation by her collective-bargaining agent, the employee was inducing group action. *See* p. 1158 *infra.* Nevertheless, the Supreme Court did not analyze the issue on those terms, but instead based its conclusions on the effects of the employee's action on the group, the focus of the *Interboro* approach.

We observe that the sixth circuit has recently declined to follow *Interboro. See Aro, Inc. v. NLRB,* 596 F.2d 713 (6th Cir. 1979). We also observe, however, that the court failed to con-sider the effect of *Weingarten* on the *Interboro-Mushroom* split. *See id.* at 718 & n. 3.

**11.** Nor need we address this issue in our discussion of a post-election request because after a union has won an election, even if that victory is contested as here, the employee's request for union representation satisfies the more stringent test of *Mushroom. See* p. 1162 *infra.*

**12.** We express no opinion whether section 7 protects the request of an employee for the presence of a nonemployee at an interview when that employee alone constitutes an entire bargaining unit. *Cf. NLRB v. Century Broadcasting Corp.,* 419 F.2d 771 (8th Cir. 1969) (employee, who constituted entire bargaining unit, engaged in concerted activity for mutual aid and protection when he complained of breaches of collective bargaining agreement and threatened to contact his union).

make certain that the employer does not initiate or continue a practice of imposing punishment unjustly." *Id.*, 420 U.S. at 260–61, 95 S.Ct. at 965 (footnote omitted). In contrast, before a representation election, the union representative does not safeguard the interests of the entire unit; rather, he is in a position to represent only the interests of the particular employee subjected to the interview. Similarly, because the union representative at this point participates in the interview simply on the behalf of the one employee, his presence is not "an assurance to other employees in the bargaining unit that they, too, can obtain his aid and protection if called upon to attend a like interview." *Id.* at 261, 95 S.Ct. at 965.

We recognize that even before a representation election is conducted, the participation of a union representative, or any outsider for that matter, will redress the inequality of bargaining power between employer and employee because the employee will not confront his employer alone, *see id.* at 261–62, 95 S.Ct. at 965–66, and that the representative's presence might also assist the fact-finding process to which the interview is designed. *See id.* at 262–63, 95 S.Ct. at 966. Nevertheless, these benefits also inure primarily to the employee under investigation. Their ability to affect the entire bargaining unit depends upon the status of the union representative as the unit's collective-bargaining representative who, once familiar with the workplace and its disciplinary problems, is in a position to engage in collective bargaining and the processing of grievances in order to serve all employees. *See generally* Comment, *Union Presence in Disciplinary Meetings*, 41 U.Chi. L.Rev. 329, 338–41 (1974). Obviously, before a representation election is conducted, the union representative cannot attain this status.

The situation is radically altered, however, after a representation election is held, and the union is victorious, even if that victory is challenged. At that point, the request of the employee for union representation takes on an entirely different character; the nature of the activity changes. No longer is the employee asking for the participation of a nonemployee who is in a position to represent only the employee's individual interest. Instead, after the union's victory in even a challenged election, the employee's request for union participation is "engaged in with the object of initiating or inducing or preparing for group action [and has] some relation to group action in the interest of the employees." *Mushroom, supra*, 330 F.2d at 685. After the union has won the election, the employee quite properly perceives his request to be one for the concerted mutual aid and protection of his fellows, for the union then stands in for all the unit employees. *See* Comment, *Constructive Concerted Activity and Individual Rights: The Northern Metal-Interboro Split*, 121 U.Pa.L.Rev. 152, 167 (1972); *cf. Trailmobile Division, Pullman Inc. v. NLRB*, 407 F.2d 1006 (5th Cir. 1969) (presentation of grievances on behalf of other employees by single employee, acting in capacity as union steward, is protected by section 7). Accordingly, under even the more stringent *Mushroom* test, the employee's request for union representation by a union which has won a challenged election is concerted activity for mutual aid and protection; the request is therefore protected by section 7.[13]

### D.

Our holding that section 7 grants an employee the right to union representation after the union has won a challenged election[14] does not end our inquiry, for we must still decide whether an employer's denial of

---

**13.** It is possible that section 7 does not protect an employee's insistence on the presence of a nonemployee union representative at an interview when an employee union representative is readily available. *Cf.* Coca-Cola Bottling Co. of Los Angeles, 227 N.L.R.B. 1276 (1977) (employee's insistence on presence of shop steward he knew was on vacation held unprotected in light of availability of union business agent, a nonemployee). We need not address this issue, however, since no such claim has been made.

**14.** The meaning of the words "won a challenged election" is discussed at note 8 *supra*.

an employee's request for representation violates section 8(a)(1).[15] Resolution of this question depends upon a determination whether the employee's section 7 right to union representation outweighs an employer's right to exclude nonemployees from his property.[16] *See, e. g., Eastex, supra*, 98 S.Ct. at 2515; *compare NLRB v. Babcock & Wilcox Co.*, 351 U.S. 105, 76 S.Ct. 679, 100 L.Ed. 975 (1956), *with Republic Aviation Corp. v. NLRB*, 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372 (1945).

Our discussion must begin with a review of the Supreme Court's decision in *Babcock & Wilcox Co., supra*. In that case, an employer had refused to permit nonemployee union organizers to distribute union literature on company-owned parking lots. The Board had held that this refusal violated section 8(a)(1) because, applying the rationale of an earlier decision, it found that the employer's action "placed an unreasonable impediment on the freedom of communication essential to the exercise of its employees' right to self-organization." *Id.*, 351 U.S. at 110, 76 S.Ct. at 683, *quoting* LeTourneau Co. of Georgia, 54 N.L.R.B. 1253, 1262, *rev'd*, 143 F.2d 67 (5th Cir. 1944), *rev'd sub nom. Republic Aviation Corp. v. NLRB*, 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372 (1945). The Court struck a different balance between the employees' section 7 organizational rights and the employer's property rights:

> It is our judgment, however, that an employer may validly post his property against nonemployee distribution of union literature if reasonable efforts by the union through other available channels of communication will enable it to reach the

employees with its message and if the employer's notice or order does not discriminate against the union by allowing other distribution.

*Id.* at 112, 76 S.Ct. at 684.

■ We believe that the situation in *Babcock & Wilcox* is analogous to that existing when an employee asks for the presence of a union representative before a representation election has been conducted. Since an employee always has the right to the presence of another employee at an interview, *see* section IIA *supra*, an alternative method of obtaining representation exists which is not disruptive of the employer's property rights. Moreover, before an election has been held, the presence of another employee will better serve both the requesting employee and the bargaining unit than the participation of a nonemployee union representative since the former, but not the latter, will be familiar with the workplace and will represent the interests of employees other than the requesting employee. *See* pp. 1161–1162 *supra*. We thus conclude that before a representation election is held, an employer may nondiscriminatorily exclude from his property a union representative who is to represent an employee in an interview, and that this result would obtain even if the employee's request is concerted activity within the meaning of section 7.[17]

■ The balance between the employees' section 7 rights and the employer's property rights shifts drastically once the union has been either voluntarily recognized or certified as collective-bargaining representative. *See Weingarten, supra*.[18]

---

**15.** Section 8(a)(1) of the Act is reprinted at note 2 *supra*.

**16.** To the point of redundancy, we again remind our readers that our use in section II of this opinion of the term "union representative" and other of like import refers to the presence of nonemployees. *See* p. 1158 and note 6 *supra*.

**17.** Our conclusion that section 7 does not grant a right to union representation before a representation election is conducted appears at pages 1161–1162 *supra*.

We express no opinion whether before a representation election is held, an employer's property rights must yield to the possibly protected request for the presence of a nonemployee by an employee who alone constitutes an entire bargaining unit. *See* note 12 *supra*.

**18.** The recognition in *Weingarten, supra*, that an employer's property rights succumb to an employee's request for union representation when the union has been certified or voluntarily recognized is implicit in the use of the term "union representation" throughout the entire majority opinion. Moreover, the fact that the Court distinguished between "employees" and

Once the union has attained the status of the exclusive collective-bargaining agent, the alternative to its presence at an interview, the participation of another employee, becomes a far inferior substitute. Since the union is the proper party to the prosecution of grievances and the process of collective bargaining,[19] and because the union is best able to safeguard the interests of all the employees it has been chosen to represent, see pp. 1158–1160 supra, at an interview a union representative is better able to fulfill the functions envisioned in Weingarten than is another employee. Accordingly, when the union has been certified or voluntarily recognized as bargaining agent, the employer's property rights must yield to an employee's request for union representation.[20]

It should be obvious that the situation confronting us, that in which an employee requests the presence of a representative from a union which has won a challenged election but has not yet been certified, falls within the interstices of the two alterna-

tives discussed above. At the time of the requests for its services, the union in this case was not in the position of a union which had yet to engage in a representation election, for the unit employees in petitioner's plant had, pending the resolution of the election challenges, expressed their desire for the union's representation. Nor was the union in the position of a union which had been certified or voluntarily recognized as bargaining agent, for, if the election challenge had been resolved in petitioner's favor, the union would not have been able to claim the status of unit representative.

█ We believe that this situation is analogous to that in which the employer, in the face of a union's challenged election victory, unilaterally changes conditions of employment that are mandatory subjects of bargaining. In such a situation, prior to resolution of the election challenge, the employer may assert his prerogative to manage his plant without interference at the

---

"union representatives" is shown by the dissent's characterization of the Court's holding in the following terms: "The Court today construes [the right to engage in concerted activities for mutual aid or protection] to include union representation or the presence of another employee at any interview the employee reasonably fears might result in disciplinary action." Id., 420 U.S. at 269, 95 S.Ct. at 969 (dissenting opinion) (emphasis supplied).

The Board has also recognized that an employee has the right to the presence of a nonemployee union representative. In Coca-Cola Bottling Co. of Los Angeles, 227 N.L.R.B. 1276 (1977), the Board held that an employee's insistence on the presence of a shop steward he knew was on vacation was unprotected activity. This holding rested on the ground that the union business agent, a nonemployee, was not more than five minutes from the employer's place of business and could have come to assist in the interview. See id. at 1276, 1279–80. Similarly, in Super Valu Xenia, a Division of Super Valu Stores, Inc., 236 N.L.R.B. 1581 (1978), the employer violated section 8(a)(1) by denying an employee's request for union representation at an interview which the employee reasonably believed would result in discipline. The Board concluded that even though no union representative was available at the time of the interview, rather than compelling the employee's unattended presence, the employer should have postponed the meeting until a un-

ion representative could be procured. See id. at 1589, 1590–91.

**19.** Indeed, an employer violates section 8(a)(5) of the Act, 29 U.S.C.A. § 158(a)(5) (West 1973), when he bypasses the chosen collective-bargaining agent and negotiates with individual employees concerning mandatory subjects of collective bargaining. See Medo Photo Supply Corp. v. NLRB, 321 U.S. 678, 64 S.Ct. 830, 88 L.Ed. 1007 (1944).

**20.** It is possible that even when a union is certified or voluntarily recognized, an employer can refuse to allow the presence of a nonemployee union representative at an interview when an employee union representative is available for participation. He would thus properly assert his property rights without violating section 8(a)(1). Cf. Crown Zellerbach, 239 N.L.R.B. No. 158, 100 L.R.R.M. 1092 (1978) (employer did not violate section 8(a)(1) by denying employee's request for presence of chosen representative because nearest union representative was sixty miles away and employer allowed presence of another employee who was a known union leader); Coca-Cola Bottling Co. of Los Angeles, 227 N.L.R.B. 1276 (1977) (employee's insistence on presence of shop steward he knew was on vacation held unprotected in light of availability of union business agent, a nonemployee). Since no such claim is before us, we need not reach this question.

risk that his conduct will violate section 8(a)(5) if the union has indeed won the election and is later certified. *See* section I *supra.* Similarly, when an employee requests the presence of a union representative from a union which has won a challenged election,[21] the employer may assert his right to exclude nonemployees from his property and conduct an interview after denying the employee's request for union representation at the risk that this conduct will violate section 8(a)(1) if the union has indeed won the election and is later certified.[22] Since the union in this case was certified, petitioner lost its gamble in denying union representation to Charles and Kittley. Thus, if those interviews were the type at which the employees were entitled to representation, petitioner's conduct violated section 8(a)(1). To this issue, we now turn our attention.

### III.

### A.

██ We have little difficulty finding that Charles was entitled to union representation at his interview. The allegations of the complaint, admitted by petitioner, were that petitioner "required employee Herbert Charles to attend an investigatory interview at its plant" and "refused to permit employee Herbert Charles to be represented by his Union at the investigatory interview." The parties thus do not dispute that the interview to which Charles was subjected was the type covered by *Weingarten, supra,* namely an investigatory interview which the employee reasonably believed might result in disciplinary action. *See id.,* 420 U.S. at 252, 95 S.Ct. at 961. Compelling an employee to attend such an interview when his request for union representation has been denied violates section 8(a)(1) of the Act. *See id.* at 258–59, 95 S.Ct. at 964. Accordingly, we conclude that the Board properly found that petitioner violated section 8(a)(1) by forcing Charles to attend an interview without the presence of a union representative.

### B.

1. Our task with regard to the interview which Kittley was required to attend is far less simple, for the parties, the administrative law judge, and the Board have characterized this interview as "disciplinary." Since *Weingarten* ratified the Board's finding of a section 7 right to union representation only with regard to an "investigatory" interview, we must independently examine whether the functions of a union representative at a "disciplinary" interview render the union's presence at this interview a concerted activity for mutual aid or protection. *See id.* at 260–62, 95 S.Ct. at 965–66.[23]

---

21. The meaning of the words "won a challenged election" is discussed at note 8 *supra.*

22. We find it hardly necessary to add that the requesting employee is not at the same risk. As we have stated, after the union has won a challenged election, an employee's request for its presence at an interview which he reasonably believes will result in discipline is section 7 concerted activity. *See* p. 1162 *supra.* The fact that the election challenge might later be resolved in the employer's favor cannot change the nature of the employee's prior request. By requesting the aid of the union which has won a challenged election, the employee is inducing group activity. Thus, his action satisfies the *Mushroom* standard for concerted activity. *See id.* His conduct is therefore protected by section 7 whether or not the union is eventually certified.

23. Some courts have characterized this issue to be whether *Weingarten* should be read to require the presence of a union representative at an interview whose purpose is solely to mete out a predetermined disciplinary decision. *See, e. g., NLRB v. Certified Grocers of California, Ltd.,* 587 F.2d 449, 451 (9th Cir. 1978); *Alfred M. Lewis, Inc. v. NLRB,* 587 F.2d 403, 410–11 (9th Cir. 1978); *Mt. Vernon Tanker Co. v. NLRB,* 549 F.2d 571, 573–75 (9th Cir. 1977). While we concur in the holdings of these courts, see pp. 1167–1168 *infra,* we disagree with their characterization of the issue as one involving the applicability of the Supreme Court's *Weingarten* decision. The fact that the Court approved the Board's construction of section 7 as containing one right does not in itself indicate a conclusion that other rights may not be found in section 7. *See Columbia University, supra,* 541 F.2d at 930–31. Thus, our task is to determine, as did the Supreme Court in *Weingarten, see* 420 U.S. at 260–62, 95 S.Ct. at 965–66, whether the role to be played by the union representative in the interview renders his presence a concerted activity for mutual aid or protection.

2. In Certified Grocers of California, Ltd., 227 N.L.R.B. 1211 (1977), *enforcement denied*, 587 F.2d 449 (9th Cir. 1978), the Board held that an employee had the right to union representation at an interview whose sole purpose was to deliver a warning notice to the employee. Purporting to apply the Supreme Court's decision in *Weingarten*, the Board found that section 7 granted an employee the right to union representation at any interview which he reasonably believed might result in discipline.

The Board has since reversed its field, however, and concluded in Baton Rouge Water Works Co., 246 N.L.R.B. No. 161, [1979–80] Lab.L.Rep. (CCH) ¶ 16,607 (1979), that *Certified Grocers* was incorrectly decided on its facts. In *Baton Rouge Water Works*, an employee, Deborah Achord, was called to her supervisor's office to be told that she had been discharged due to unsatisfactory job performance. At this interview, Achord was told "that she had been called in because 'things were not working out'" and that "it would be in the Company's best interest if that was Achord's last day of work." *Id.*, [1979–80] Lab.L.Rep. (CCH) ¶ 16,607 at 30,989. Achord objected that the discharge was unfair and requested the presence of a union representative. After this request was denied by the employer, Achord asked why she was being fired, and the employer explained the reasons for the termination. The interview then ended.

A divided Board [24] held that Achord had no section 7 right to union representation at this interview. Overruling *Certified Grocers, supra,* the Board held that "an employee has no Section 7 right to the presence of his union representative at a meeting with his employer held solely for the purpose of informing the employee of, and acting upon, a previously made disciplinary decision." *Id.*, [1979–80] Lab.L.Rep. (CCH) ¶ 16,607 at 30,990. The Board further explained its holding in the following terms:

> We stress that we are *not* holding today that there is no right to the presence

of a union representative at any "disciplinary" interview. Indeed, if the employer engages in any conduct beyond merely informing the employee of a previously made disciplinary decision, the full panoply of protections accorded the employee under *Weingarten* may be applicable. Thus, for example, were the employer to inform the employee of a disciplinary action and then seek facts or evidence in support of that action, or to attempt to have the employee admit his alleged wrongdoing or to sign a statement to that effect, or to sign statements relating to such matters as workmen's compensation, such conduct would remove the meeting from the narrow holding of the instant case, and the employee's right to union representation would attach. In contrast, the fact that the employer and employee thereafter engaged in a conversation at the employee's behest or instigation concerning the reasons for the previously determined discipline will not, alone, convert the meeting to an interview at which the *Weingarten* protections apply.

In summary, as long as the employer has reached a final, binding decision to impose certain discipline on the employee prior to the interview, based on facts and evidence obtained prior to the interview, no Section 7 right to union representation exists under *Weingarten* when the employer meets with the employee simply to inform him of, or impose, that previously determined discipline. To the extent that the Board has in the past distinguished between investigatory and disciplinary interviews, in light of *Weingarten* and our instant holding, we no longer believe such a distinction to be workable or desirable. It was this distinction which *Certified Grocers* abandoned, and to that extent we still believe the decision was correct. Thus, the full purview of protections accorded employees under *Weingarten* ap-

---

24. Members Jenkin, Jr., and Truesdale, joining in one opinion, and Member Murphy, concurring in a separate opinion, formed the Board majority. Members Fanning and Penello each dissented in separate opinions.

ply to both "investigatory" and "disciplinary" interviews, save only those conducted for the exclusive purpose of notifying an employee of previously determined disciplinary action.

**25.** Member Murphy wrote separately because of her belief that "[c]onfusion in the wake of *Weingarten* stems from the propensity of my colleagues, both on the majority and those dissenting herein, to use the term 'interview' indiscriminately 'when attempting to mark the boundaries of an employee's right to representation in a confrontation with his or her employer." *Id.*, [1979–80] Lab.L.Rep. (CCH) ¶ 16,-607 at 30,991 (concurring opinion) (footnote omitted). She believes that the Board should "maintain a real distinction between investigatory *interviews* and disciplinary *actions* in determining whether or not an employee has a right to representation when summoned to appear before management." *Id.*, [1979–80] Lab. L.Rep. (CCH) ¶ 16,607 at 30,992 (concurring opinion). Her method to distinguish interviews, at which an employee is entitled to representation, from disciplinary actions, at which he is not, shows her agreement with the distinctions drawn by Members Jenkins, Jr., and Truesdale as to the parameters of the section 7 right:

> I would find an employee entitled to the presence of a representative, upon request, in any interview—whether called investigatory or disciplinary—in which information is sought from the employee. I thus distinguish between interviews to secure information on the one hand, and action to impose discipline on the other. The logic behind such a distinction is readily apparent when considered in the light of the Supreme Court's opinion in *Weingarten* wherein the Court observed that the function of an employee representative present at investigatory interviews is "to assist the employee, and . . . attempt to clarify the facts or suggest other employees who may have knowledge of them."

*Id.* (footnote omitted).

**26.** Member Penello in dissent in *Baton Rouge Water Works* contends that the majority view conflicts with a line of Board cases establishing an employee's right to representation in a disciplinary interview. It is true that in many prior Board decisions, a right to representation was found to exist when the employer had reached a decision to discipline the employee and had then held an interview. However, in each case the employer in the interview did not merely inform the employee of the previously made disciplinary decision, but instead also elicited facts to support its actions. *See, e. g.*, Chevron Oil Co., 168 N.L.R.B. 574, 577 (1967); Texaco, Inc., 168 N.L.R.B. 361 (1967). Therefore, contrary to Member Penello's suggestion, none conflicts with the majority rule announced in

*Id.*, [1979–80] Lab.L.Rep. (CCH) ¶ 16,607 at 30,990–91 (footnote omitted).[25]

 We agree with the Board's reading of section 7 in *Baton Rouge Water Works*,[26] for we conclude that even under

*Baton Rouge Water Works.* We have found no case in which the Board found a right to representation in an interview conducted solely to inform an employee of a previously reached disciplinary decision; all reported prior cases in which the right to representation existed involved some form of fact-finding by the employer.

Moreover, "its earlier precedents do not impair the validity of the Board's construction. That construction in no wise exceeds the reach of § 7, but falls well within the scope of the rights created by that section. The use by an administrative agency of the evolutional approach is particularly fitting." *Weingarten, supra*, 420 U.S. at 265, 95 S.Ct. at 967–968. The Board has found that it is necessary to eschew the labels "disciplinary" and "investigatory" to determine when an interview will invoke a right to representation; it has chosen instead to focus on the nature of the interview, whether or not it involves fact-finding. This abandonment of the labels "disciplinary" and "investigatory" to characterize interviews was necessary because their use has been totally ambiguous and has engendered great confusion. The terms have been indiscriminately used to described three entirely distinct inquiries. First, they have been used to characterize the state of mind of an employee: did the employee reasonably believe that the interview would result in discipline? Second, the terms have been used to describe the state of mind of the employer: did the employer conduct the interview with the purpose of investigation or with the end of merely informing the employee of a previously reached disciplinary decision? Third, the labels have been used to characterize the actual occurrences at the interview: did the employer engage in investigation or only mete out a predetermined disciplinary decision? Given this confusion, the Board has properly fashioned a rule in *Baton Rouge Water Works* that is far simpler to administer and eliminates the ambiguity inherent in using the terms "disciplinary" and "investigatory" to describe an interview. The Board has reached this solution by means of an evolutional approach; we are loathe to displace its judgment.

Member Penello also takes issue with the majority's belief that if faced with an employee's right to representation at an interview conducted solely to mete out predetermined discipline, an employer will instead revert to the "pink slip" alternative. *See Baton Rouge Water Works, supra*, [1979–80] Lab.L.Rep. ¶ 16,607 at 30,991. He objects that such a

the *Interboro* standard,[27] no concerted activity for mutual aid or protection exists when a union representative is present at an interview "held solely for the purpose of informing the employee of, and acting upon, a previously made disciplinary decision." *Id.,* [1979–80] Lab.L.Rep. (CCH) ¶ 16,607 at 30,990. Since the disciplinary decision has already been made, the union representative cannot safeguard "the interests of the entire bargaining unit by exercising vigilance to make certain that the employer does not initiate or continue a practice of imposing punishment unjustly." *Weingarten, supra,* 420 U.S. at 260–61, 95 S.Ct. at 965 (footnote omitted). Similarly, because there is no fact-finding at such an interview, the union representative cannot aid the employer and employee by furthering the former's investigation of the incident at issue. *See id.* at 262–63, 95 S.Ct. at 966. What occurs at such an interview is of interest only to the disciplined employees; it cannot affect the interests of the other unit employees. Therefore, we hold that section 7 does not grant an employee the right to representation at an interview conducted solely to inform the employee of, and acting upon, a predetermined disciplinary decision.[28] *Accord, AAA Equipment Service Co. v. NLRB,* 598 F.2d 1142, 1146 (8th Cir. 1979); *Certified Grocers, supra* ; *Alfred M. Lewis, supra.*

3. From the present record, we are unable to conclude whether under *Baton Rouge Water Works*[29] Kittley had a right to the presence of a union representative at the interview which he was compelled to attend. The parties have characterized the interview as "disciplinary." However, that term may simply reflect a predetermined decision to discipline Kittley, or it may reflect the events occurring at the interview. *See* note 26 *supra.* To determine whether there was a right to representation at Kittley's interview, we must know what transpired there; the record contains no evidence concerning the occur-

---

"rationale is even more applicable to the circumstances of an investigatory interview" and that "the Supreme Court in *Weingarten* clearly rejected that rationale . . . ." *Id.,* [1979–80] Lab.L.Rep. ¶ 16,607 at 30,999 (dissenting opinion).

We respectfully disagree with this assertion, for we do not believe that the avoidance rationale is more applicable to interviews at which there is to be investigation. On the contrary, interviews in which there is to be fact-finding "serve to prevent erroneous discipline and are likely to continue even if steward attendance is required. Loss of trained personnel not actually guilty of any wrongdoing is costly to the employer and likely to be reversed in the grievance procedure, and plant morale suffers if employees are unjustly disciplined." Comment, *Union Presence in Disciplinary Meetings,* 41 U.Chi.L.Rev. 329, 330 n. 7 (1974). However, because an interview held solely to inform an employee of a predetermined disciplinary decision does not serve to prevent the erroneous imposition of discipline, none of these incentives, which induce employers to conduct investigatory interviews despite the right to union representation, is applicable. Thus, we agree with the majority that an employer might instead resort to the impersonal and less attractive alternative of simply issuing a "pink slip" to the disciplined employee.

27. The *Interboro* standard for concerted activity for mutual aid or protection is discussed at page 1160 *supra.*

28. To put it in positive terms, we hold that an employee has the right to representation in any interview which he reasonably believes might result in disciplinary action except when the employer (1) has, before the interview, reached a decision to discipline the employee, (2) conducts the interview solely with the purpose of informing the employee of that decision, and (3) conducts that interview without going beyond that purpose.

29. *Baton Rouge Water Works* was decided subsequent to the events which led to the unfair labor practice charges in this case. However, we do not believe that there can be unfair surprise created by the retroactive application of that decision. From petitioner's viewpoint, the retroactive application of *Baton Rouge Water Works* can only be beneficial, extinguishing the backpay liability to Kittley that may have existed under *Certified Grocers, supra.* From Kittley's standpoint, there was no reliance on the prior precedent that led to adverse consequences. The record reflects that Kittley was discharged not for refusing to participate in an interview because of the denial of a request for representation, but because he had engaged in a water fight. Therefore, Kittley in no way relied upon *Certified Grocers.*

rences at the interview.[30] Accordingly, we must vacate the Board's finding that petitioner violated section 8(a)(1) by requiring Kittley to submit to an interview without representation. We remand the case so that the Board can determine what type of interview was conducted in light of *Baton Rouge Water Works* and this opinion.[31]

## IV.

The petition for review is GRANTED in PART and DENIED in PART; the petition for enforcement is GRANTED in PART and DENIED in PART; and the case is REMANDED in PART for proceedings not inconsistent with this opinion.

**30.** Attempting to bring Kittley's interview within the ambit of *Weingarten, supra,* the General Counsel argues that the interview had an "investigatory element." The sole evidence for this element is petitioner's testimony that the meeting with Kittley was called "to discuss" the incident which led to the discipline. Even were we to accept the General Counsel's view of this testimony as tending to show an investigatory purpose for the interview, this evidence cannot possibly constitute substantial evidence on the record taken as a whole that the interview was indeed investigatory.

**31.** Since we vacate the Board's finding of a section 8(a)(1) violation, we are spared the necessity of solving another interesting conundrum presented by this case: whether, to remedy the abrogation of an employee's right to union representation at an interview, the Board can order his reinstatement even though he was red-handedly caught engaging in a water fight, and was thus fired for cause, and despite the fact that section 10(c) prohibits the reinstatement of an employee who was fired for cause. *Compare Fibreboard Paper Products Corp. v. N.L.R.B.,* 379 U.S. 203, 85 S.Ct. 398, 13 L.Ed.2d 233 (1964), *with NLRB v. Potter Electric Signal Co.,* 600 F.2d 120 (8th Cir. 1979).