NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

SOUTHERN BELL TELEPHONE AND
TELEGRAPH, Respondent.

No. 80–7921.

United States Court of Appeals,
Eleventh Circuit.

May 17, 1982.

Elliott Moore, Deputy Associate Gen. Counsel, Allison W. Brown, Jr., Atty., N.L. R.B., Washington, D. C., for petitioner.

William J. Bruckner, Atlanta, Ga., for respondent.

Before TJOFLAT, HILL and ANDERSON, Circuit Judges.

R. LANIER ANDERSON, III, Circuit Judge:

In this labor case, petitioner National Labor Relations Board ("NLRB") applies for enforcement of its order against respondent Southern Bell Telephone and Telegraph ("Southern Bell") issued on August 27, 1980. 251 NLRB No. 159 (1980). The NLRB ruled that on November 17, 1977, Southern Bell committed an unfair labor practice in violation of § 8(a)(1) of the National Labor Relations Act, 29 U.S.C.A. § 158(a)(1) (West 1973), by denying Lafaye K. Shoemaker, a Southern Bell employee, her right to a union representative at an investigatory interview. Following that interview, Southern Bell imposed on Shoemaker a two-week disciplinary suspension.

The NLRB ordered Southern Bell (1) to cease and desist from denying union representation at investigatory interviews, (2) to remove from Shoemaker's file any reference to her suspension, (3) to make Shoemaker whole for any loss of pay she suffered as a result of the suspension, and (4) to post a notice informing employees of the cease and desist order and of the back pay and file correction orders. We grant enforcement in part and deny enforcement in part.

## I. FACTS

Shoemaker worked as a service evaluator for Southern Bell. Her duties included monitoring certain equipment and completing certain tickets that reflected the degree of efficiency with which Southern Bell's system operated. The monitored equipment dispenses a tape showing telephone numbers dialed and the sequence in which they were dialed. For each number, Shoemaker was supposed to complete a ticket by inserting certain information, including the times dialed and completed. In August, 1977, because of numerous instances of inaccurate tickets, Southern Bell initiated an investigation. On November 17, 1977, after Southern Bell discovered that Shoemaker had completed some of the inaccurate tickets, Shoemaker's supervisors conducted an interview with her at which they asked her to explain the inaccuracies. Shoemaker requested that a union representative be called before she would answer any questions. Southern Bell's supervisors refused to honor this request and continued to press Shoemaker for an explanation of the ticket inaccuracies. After her continued refusal to answer, Southern Bell ended the interview. Subsequently, Shoemaker received a two-week disciplinary suspension.

## II. ISSUE

The major issue in this case is whether substantial evidence supports the NLRB's finding that Southern Bell's decision to suspend Shoemaker was based at least in part upon her failure during her interview to offer any explanation for the ticket inaccuracies, which failure in turn was based upon her assertion of her right to union representation.

## III. DISCUSSION

Before addressing the major issue in this case, it is important to note what is *not* at issue on appeal. Southern Bell does not contest the NLRB's conclusion that Southern Bell unlawfully refused to honor Shoemaker's request for a union representative at her interview. Under *NLRB v. J. Weingarten, Inc.*, 420 U.S. 251, 95 S.Ct. 959, 43 L.Ed.2d 171 (1975), an employee is entitled to a union representative in an investigatory interview when the employee reasonably believes that disciplinary action might result from the interview. *Id.* at 256–60, 95 S.Ct. at 963–65; *Lennox Industries, Inc. v. NLRB*, 637 F.2d 340, 343–44 (5th Cir.), *cert. denied*, 452 U.S. 963, 101 S.Ct. 3113, 69 L.Ed.2d 974 (1981); *Good Hope Refineries, Inc. v. NLRB*, 620 F.2d 57, 58 (5th Cir.), *cert. denied*, 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980); *Anchortank, Inc. v. NLRB*, 618 F.2d 1153, 1165 (5th Cir. 1980). Southern Bell does not request review of the NLRB's conclusions (1) that the November 17, 1977, Shoemaker interview was an investigatory interview, (2) that Shoemaker reasonably believed that disciplinary action might result from the interview, (3) that Shoemaker requested the presence of the union representative, and (4) that Southern Bell continued the interview without honoring Shoemaker's request. Accordingly, we uphold the NLRB's ruling that Southern Bell violated § 8(a)(1) of the National Labor Relations Act by denying Shoemaker her right to a union representative. We therefore grant enforcement of the NLRB's cease and desist order and notice-posting requirement, but with some modifications discussed later in this opinion.

The central issue in this case is whether substantial evidence supports the NLRB's finding that Southern Bell based its decision to suspend Shoemaker at least in part upon her failure to offer any explanation, during her interview, for the ticket inaccuracies. The NLRB contends that be-

cause Shoemaker's failure to explain derived from her insistence on the presence of a union representative, Southern Bell effectively penalized Shoemaker for exercising her right to request a union representative at the interview. Thus, in order to redress fully Southern Bell's denial of Shoemaker's right to a union representative, the NLRB argues, Southern Bell must cleanse its files of any reference to the suspension that followed the interview and must make Shoemaker whole for any loss of back pay she suffered as a result of that suspension. Southern Bell responds that it based its disciplinary action solely on the ticket inaccuracies (which derived wholly from information gathered before the interview), that Southern Bell obtained no incriminating information from Shoemaker during the interview, and that in deciding upon the suspension, Southern Bell did not consider Shoemaker's failure to explain the inaccuracies. We conclude that the Board's finding is not supported by substantial evidence.

We review the NLRB's conclusions only to ascertain whether substantial evidence on the record as a whole supports those conclusions. *Good Hope Refineries, Inc. v. NLRB*, 620 F.2d 57, 58 (5th Cir.), *cert. denied*, 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980). In its brief, the NLRB points to two portions of Shoemaker's supervisor's testimony before the Administrative Law Judge ("ALJ") in an attempt to establish the asserted causal connection between Shoemaker's suspension and her refusal to explain the ticket inaccuracies in the absence of a union representative.[1]

However, in both instances, the testimony does not support the causal connection asserted by the Board. The supervisor did not state that Southern Bell based its decision in part on Shoemaker's failure to explain the inaccuracies. Instead, the supervisor's testimony only describes the benefit that Shoemaker could have received had she not chosen to insist on her right to a union representative. As the Supreme Court noted in *Weingarten*, an employer may validly put the employee to the choice of (1) having an interview without a union representative present, or (2) foregoing the benefits that might be derived from the interview. 420 U.S. at 258, 95 S.Ct. at 964. Here, by insisting on the presence of a union representative, to which Southern Bell declined to agree, Shoemaker decided to forego the benefit of having an opportunity to explain the ticket inaccuracies. We recognize that Southern Bell here continued to press Shoemaker for an explanation, and thus violated her right to the union representative. However, we cannot see how this in any way affected Shoemaker's decision to forego the opportunity to explain her challenged tickets.

In addition, we cannot infer a causal connection, between the suspension and the failure to explain, from Southern Bell's mere refusal to accede to Shoemaker's request for a union representative. The Supreme Court in *Weingarten* implicitly rejected such an inference. The *Weingarten* Court noted that when an employee insists on the presence of a union representative, the employer may refuse to agree, termi-

1. The testimony noted by the NLRB reads as follows:

  NLRB: Is it likely if discrepancies are found in [an employee's] work that security is investigating, that [the employee] will be called in for discipline?
  SUPERVISOR: If [the employee] can explain the discrepancies logically, if there is any doubt, we would not discipline [the employee].

  . . . . .

  NLRB: If she [Shoemaker] had been able to adequately explain the discrepancies is it true that no disciplinary action would have been taken?

SUPERVISOR: Not necessarily because if she had explained them to her satisfaction it still might not have conformed to company policy and the company training that she had been given to perform this job.
  NLRB: Let me ask you this, if she had explained them to your satisfaction would she have been disciplined?
  SUPERVISOR: Not only to my satisfaction but she would have had to explain it in such a manner that it would be clear in this and apparent to anyone who picked up the interview and read it in the investigation that there would have been no basis for disciplinary action.
  T–86,106.

nate the interview, and act on information derived from sources outside the interview, all without violating the employee's right to a union representative. 420 U.S. at 258–59, 95 S.Ct. at 964. Thus, the Court clearly rejected the inference that an employer's refusal to acquiesce in an employee's desire to have a union representative present, by itself, infects a later disciplinary decision with a sufficient taint to permit the conclusion that the employer's decision was based in part upon the employee's assertion of the right to a union representative. Under the facts of this case, no inference of causality, between Shoemaker's suspension and her failure to explain, can be made that is any stronger than the inference rejected in *Weingarten.* We note that here, Southern Bell did not terminate the interview after Shoemaker's request for a union representative, but rather continued to press for an explanation of the ticket discrepancies. However, the ALJ's description of the interview reveals that no employer hostility or animosity was directed at Shoemaker because of her insistence on her *Weingarten* right. The interview appears to have been a calm and businesslike attempt to inquire into the ticket inaccuracies. Also, Southern Bell did not obtain any incriminating information from Shoemaker about the ticket inaccuracies. Thus, this case presents only the bare refusal to permit the presence of the union representative. The *Weingarten* Court rejected the inference that disciplinary action following such a bare refusal is necessarily caused by the assertion of the *Weingarten* right. Thus, we reject such an inference in this case.

The NLRB does not point to any other testimony of Shoemaker's supervisor, or of any other witness before the ALJ, to support its finding. Moreover, the NLRB based its back pay and file correction orders entirely on its conclusion that the suspension derived in part from Shoemaker's failure to explain the ticket inaccuracies. We hold that the NLRB's conclusion in this regard is not supported by substantial evidence. Accordingly, we deny enforcement to the NLRB's back pay and file correction orders.[2]

## IV. CONCLUSION

In sum, we grant enforcement of the NLRB's cease and desist order and notice-posting requirement and deny enforcement of the back pay and file correction orders. However, portions of the cease and desist order and of the notice contain references to the back pay and file correction orders. In the interest of judicial and administrative economy, we shall strike those references in the cease and desist order and in the notice and enforce those items as modified.

Accordingly, our disposition of the ALJ's order, adopted by the NLRB, is as follows: (1) Paragraph 1(a) is modified to read: "[a] Requiring that employees participate in employee investigatory meetings without union representation, although requested by employees who have reasonable grounds to believe that the matters to be discussed may result in their being the subject of disciplinary action," and enforced as modified; (2) Paragraph 1(b) is enforced in its entirety; (3) Paragraphs 2(a) and 2(b), referring wholly to back pay and file correction, are denied enforcement; (4) Paragraph 2(c) is enforced in its entirety, but the "notice to employees" to which the paragraph refers is modified and enforced as follows: (i) the first paragraph of the

---

**2.** We emphasize that we reject the NLRB's inference of causality here because it can be based only on the employer's mere refusal to permit the presence of a union representative during the interview. The instant case does not involve an interview (1) in which the employer's hostility or animosity toward the employee's *Weingarten* right is apparent, or (2) in which the employee, despite his insistence on the presence of a union representative, blurts out incriminating information not known to the employer before the interview. We leave for another day the question of whether the refusal to permit the presence of a union representative, combined with hostility or animosity toward the employee's *Weingarten* right, or with the revelation by the employee of incriminating information not known to the employer before the interview, would support the inference that the disciplinary decision was based in part on the assertion of the *Weingarten* right or on the interview.

notice is modified to read, "WE WILL NOT require any employee to take part in any investigatory interview or meeting in which the employee has reasonable grounds to believe that the matters to be discussed may result in his or her being the subject of disciplinary action and concerning which we have refused that employee's request to be represented by a labor organization," (ii) the second paragraph is enforced in its entirety, (iii) the third paragraph of the notice is denied enforcement; (5) Paragraph 2(d) of the ALJ's order is enforced in its entirety.

ENFORCEMENT GRANTED IN PART AS MODIFIED, DENIED IN PART.